Matthew **LEE**, Yvonne Santana, Vielka Peguero and Inner City Press/Community on the Move Homesteaders Association, Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORP. and Office of the Comptroller of the Currency, Defendants.**

No. 95 Civ. 7963 (LMM).

United States District Court,
S.D. New York.

Jan. 31, 1996.

Plaintiffs Matthew·Lee et al., pro se.

Thomas A. Schulz, Assistant General Counsel, Lorretta R. Pitt, Senior Counsel, Thomas L. Holzman, Counsel, F.D.I.C., Washington, D.C., Julie L. Williams, Chief Counsel, L. Robert Griffin, Rosa M. Koppel, Kenneth J. Lennon, attorneys, O.C.C., Washington, D.C., for Defendants.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

### I. BACKGROUND

Plaintiffs Matthew Lee, Yvonne Santana, Vielka Peguero, and Inner City Press/Com-

munity on the Move Homesteaders' Association are seeking judicial review of a conditional approval granted by the Office of the Comptroller of the Currency's Multinational Banking Division ("OCC") on July 24, 1995 which allowed United States Trust Company of New York ("U.S. Trust") to merge with and into the Chase Manhattan Bank ("Chase"). This approval was based in part on the OCC's determination that Chase was in compliance with its statutory obligations under the Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901 *et seq.* (1977). Plaintiffs have filed a complaint before this court, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (1966), requesting judicial review of the OCC's approval of the merger.

In order to challenge effectively the OCC's approval, Plaintiffs sought disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976), of the administrative record compiled by the OCC in the course of its approval process. The OCC released a significant portion of the administrative record to Plaintiffs but denied them access to certain documents in a letter dated April 25, 1995. Plaintiffs appealed this decision to the OCC by letter dated May 4, 1995. The OCC replied to the appeal on June 28, 1995 and agreed to release more, but not all, of the information requested.

The OCC now requests that this Court issue a protective order sealing the portions of its record that it did not release to Plaintiffs on the grounds that the documents are exempt from disclosure under FOIA. Plaintiffs oppose this request.

After reviewing *in camera* the documents which were not disclosed to Plaintiffs and conducting *de novo* review of the OCC's claims to exemptions under FOIA, the Court finds that the OCC improperly withheld the documents in question. Accordingly, these documents—Documents 1, 64, 65, 66, 67, 68, and 69 of the Administrative Record—must be disclosed to Plaintiffs.

## II. STANDARD OF REVIEW

The purpose of the Freedom of Information Act is to open the records of federal agencies to the public in a manner which is consistent with the "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975) (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)); *see also EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–33, 35 L.Ed.2d 119 (1973). The Freedom of Information Act has been described as legislation which "attempt[s] to meet the demand for open government while preserving workable confidentiality in governmental decisionmaking." *Chrysler Corp. v. Brown,* 441 U.S. 281, 292, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1973).

Under the Act, any person has a right of access to federal agency records, subject to nine enumerated exemptions to disclosure. An agency that seeks to withhold information must show that its refusal to disclose falls within one of the nine specific exemptions. 5 U.S.C. § 552(b)(2)–(9). As noted in *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980) (Wald, J.) ("*Coastal States*"), the agency's burden of justification is substantial:

> ... conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases....

> ....

> We remind the agencies, once again, that the burden is on them to establish their right to withhold information from the public and they must supply the courts with sufficient information to allow us to make a reasoned determination that they were correct.

A person whose FOIA request has been denied in full or in part may appeal an agency's determination to a district court. See 5 U.S.C. § 552(a)(4)(B). FOIA specifies that a district court must conduct *de novo* review of an agency's claims to exemptions. Each exemption is to be narrowly construed with all doubts resolved in favor of disclosure. See 5 U.S.C. § 552(a)(4)(B); *Department of the Air Force v. Rose,* 425 U.S. 352, 361–62, 96 S.Ct. 1592, 1599–1600, 48 L.Ed.2d 11 (1976). *De novo* review requires the court

to reweigh the evidence compiled by the agency to determine whether the agency's findings are correct, not just whether they are reasonable.

FOIA authorizes, but does not require, the district court to conduct *in camera* inspection of the documents in question. See 5 U.S.C. § 552(a)(4)(B). *In camera* inspection is appropriate when the number of documents to be reviewed is manageable. In the present case, the documents that were withheld are not so numerous as to make *in camera* review unduly burdensome. The court will examine each document in light of the objections to disclosure raised by the OCC.

## III. THE SEVEN DOCUMENTS

■ The OCC argues that the standard for determining whether the documents it claims are exempt should be disclosed varies depending upon whether the document was a required or voluntary submission to the agency. If the submission was voluntary, the OCC argues, citing *Critical Mass Energy Project v. NRC,* 975 F.2d 871, 880 (D.C.Cir. 1992) and *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir. 1974), the documents need not be disclosed if, 1) the information is customarily considered confidential; and 2) disclosure would likely impair the government's ability to obtain necessary information in the future. If the submission is mandatory, the document must be disclosed unless disclosure would cause substantial competitive harm to the submitter. See 12 C.F.R. 4.18(d)(1)(i).

The OCC acknowledges that all of the submissions it categorized as "voluntary" were required to be submitted to the Federal Reserve Board ("FRB"). These documents were not submitted to the OCC as a result of Chase's desire to help the OCC more fully understand Chase's operations; the OCC had access to these documents because they were submitted to the FRB as a mandatory submission in the FRB approval process. Since FRB approval is required as a condition precedent to OCC approval, it is unclear to the court in what real sense these submissions were voluntary as the documents must be submitted before the OCC approval process can even begin.

Even if these submissions were considered voluntary, disclosure would not be prohibited under the "voluntary submission" legal standard, as the second prong of the test—a showing of a likely chilling of future submissions to the agency—would not be satisfied since submitters would still need FRB and OCC approval of future transactions.

The question remaining then is whether disclosure of any of the documents in question would cause substantial competitive harm to Chase. The Court will consider each document in turn.

### 1. Document 1

The OCC denied Plaintiffs access to documents marked Document 1—collectively entitled "Selected Pro Forma Financial and Capital Information" and the September 1994 Balance Sheets—on the ground that the documents are exempt from disclosure under exemption 4 of FOIA, 5 U.S.C. § 552(b)(4). This section exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." The OCC argues that Document 1 contains "confidential projections regarding the impact that the merger would have on Chase Manhattan" and "contains confidential proprietary and commercial information of Chase Manhattan Bank, disclosure of which could cause substantial competitive harm to Chase Manhattan." (OCC Reply Memo at 3)

■ The OCC has addressed the propriety of disclosing this document in some detail. In its reply to Plaintiffs' appeal of the OCC's denial of access to this document, the OCC agreed to release a portion of this document, specifically the historical data column. The OCC refused to release the information in the columns marked "Adjustments" and "Pro Forma." The OCC released the historical column information not upon their own determination that such information should be released but because Chase advised the OCC that they "would no longer assert that the historical data column ... should be retained as confidential." (Serino Letter at 4) The

OCC's attitude toward disclosure, as evidenced in their letter to Plaintiffs, appears to defer the determination of the propriety of disclosure to Chase. The OCC is required to determine for itself whether the information in question should be disclosed, with a strong agency-wide presumption favoring disclosure. Consultation with the financial institution in question, while appropriate as one step in the evaluation process, is not sufficient to satisfy the OCC's FOIA obligations.

 With this in mind, the Court must determine whether the remainder of Document 1 should be disclosed to Plaintiffs. The OCC claims that Chase would suffer substantial competitive harm if the information were disclosed, asserting that:

[the documents] contain financial information in pro forma balance sheet and chart form and explanatory notes. This information reflects the anticipated impact on CMC's and the Bank's balance sheet and capital position from the merger. The data is broken down in a different manner than is otherwise required for standard quarterly and annual bank reporting purposes. Furthermore, the FRB-directed Vol. II (in Appendix 4) includes certain agreements between CMC and U.S. Trust Corp. which are confidential. All this information, and the format in which it is provided, is not publicly available. (Serino Letter at 3)

The OCC also states that investors may be misled by the public disclosure of this information, as it is presented

in a context that would not necessarily be understood by an ordinary member of the public. Since it was prepared for the specific purposes of these applications, disclosure could be misleading because the presentation includes speculative elements, as well as a different breakdown of risk-weighting data. (Serino Letter at 5)

Finally, the OCC asserts that Chase had demonstrated the existence of actual competition. The OCC found credible Chase's assertions that disclosure of the information would provide these competitors with "post acquisition information, about the size and profitability of the entities and business to be acquired, and therefore about the financial planning, operations and strategic plans of the Bank" and "information from which they could determine the business cycle and cash flow of the business which Chase is acquiring" and from this information competitors could decide "whether, when and how to enter the securities processing market." The OCC also found credible Chase's assertion that disclosure of "any isolated, segregated or redacted version of the information could provide competitors with a basis to engage in reverse engineering, deriving other information that is confidential." (Serino Letter at 5)

In their reply memo, the OCC argues that Plaintiffs have not rebutted the statements contained in the Serino letter. In fact, the Plaintiffs bear no burden to do so and, even if they desired to do so, have no access to the documents in question. Upon review of Document 1 and the Serino letter, the Court finds clear evidence that Chase would prefer that the information be kept confidential but does not find adequate documentation of the specific, credible, and likely reasons why disclosure of the document would actually cause substantial competitive injury to Chase.

The fact that the information in Document 1 is not available to the public in the *format* in which it was presented to the OCC may be true, but the substantial competitive injury likely to result from this information being available in the new format is not apparent. In addition, the financial information in question is given for the 1994 year and any potential detriment which could be caused by its disclosure would seem likely to have mitigated with the passage of time. In general, Chase's assertions of substantial competitive injury, which were adopted by the OCC, appear to the Court to be unduly speculative and conclusory.

The Court finds that the OCC has failed to carry its burden of demonstrating in a nonconclusory fashion that substantial competitive harm would be suffered by Chase as a result of the disclosure of Document 1. Accordingly, the Court orders Document 1 to be disclosed to Plaintiffs.

## 2. Documents 65 & 66

■ Documents 65 and 66 contain fact-laden summaries of various aspects of the proposed merger of U.S. Trust Company of New York into Chase Manhattan Bank, including a discussion of Plaintiffs' formal challenge to the transaction and the OCC's response to the challenge.

The OCC invokes the deliberative process privilege to justify withholding these documents from Plaintiffs. The OCC states that Documents 65 and 66 are

> ... clearly predecisional ... prepared in order to assist Mr. Ralph Sharpe, a senior OCC official, in arriving at his decision regarding the proposal to merge U.S. Trust with and into Chase Manhattan Bank. Moreover [the documents] clearly are deliberative, in that they contain their respective authors' recommendations regarding whether the proposed merger should be approved. (OCC Reply Memo at 7–8)

In *Coastal States* the court describes the deliberative process privilege as a

> privilege unique to the government ... which is variously described as predecisional or deliberative process privilege. The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.
>
> . . . .
>
> In deciding whether a document should be protected by the privilege we look to whether the document is "predecisional"— whether it was generated before the adoption of an agency policy—and whether the document is "deliberative"—whether it reflects the give-and-take of the consultative

process. The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. (p. 866)

The OCC's legal analysis of when a document should be exempt from disclosure ends once it asserts that a document is deliberative or predecisional in nature. While such an assertion is necessary to trigger potential application of the exemption, it is not sufficient to necessitate application of the exemption. As the court in *Coastal States* notes, the exemption should only be invoked when the dangers which motivated the enactment of the exemption are present:

> Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position. To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.... We also ask whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one view-point or another. Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public. (p. 866)

The OCC has made no showing that these documents inaccurately reflect its position on the issues discussed therein. Nor has it alleged that the documents are "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency...." Under these circumstances, the Court comes to the same conclusion as that reached by the court in *Coastal States:*

We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied "as narrowly as consistent with efficient Government operation." S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). We do not believe that public knowledge of the contents of these memoranda would affect either "efficient Government operation" or any one of the various policies to be served by the Exemption. (pp. 868–69)

For these reasons, the Court finds that the OCC must disclose Documents 65 & 66 to Plaintiffs.

### 3. Documents 64 and 68

■ Document 64 and Document 68 are memoranda which address the legality of the acquisition of operating subsidiaries by Chase. The issues discussed in the memoranda involve aspects of the merger which do not pertain to the issues raised by Plaintiffs in their Complaint. Nevertheless, Plaintiffs have the same rights of access to non-relevant information as to relevant information under the FOIA. The government asserts that these memoranda should be exempt from disclosure, claiming that both documents are exempt under the attorney-client privilege and that Document 68 is also exempt under the deliberative process privilege.

The attorney-client privilege is analyzed under exemption § 552(b)(5) which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." In *Coastal States*, the court discusses the attorney-client privilege in relation to exemption § 552(b)(5):

[i]t is clear, however, that Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA. The courts have recognized that Exemption 5 protects, as a general rule, materials which would be protected under the attorney-client privilege, the attorney work-product

privilege, or the executive "deliberative process" privilege. (p. 862) (citations omitted)

The attorney-client privilege is narrow in regard to a government agency such as the OCC. In *Coastal States*, the court described the exceptional circumstances in which the exception can be invoked properly by an agency:

While it is clear that an agency can be a "client" and agency lawyers can function at "attorneys" within the relationship contemplated by the privilege, this does not seem to be such a case.... [The documents] do not contain private information concerning the agency. Rather than "counseling," intended to assist the agency in protecting its interest, the memoranda here seem to be neutral, objective analyses of agency regulations. They resemble, in fact, question and answer guidelines which might be found in an agency manual. In sharp contrast are the documents and memoranda in issue in *Mead Data Central [v. U.S. Dept. of Air Force ]*, 184 U.S.App.D.C. 350, 566 F.2d 242 [ (1977) ] in which disclosure was sought of material generated in the course of negotiating a contract between the Air Force and a private company. In such a case, the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors. This case bears little resemblance to that situation. (p. 863)

Similarly, the Court finds that these memoranda contain standard legal analysis of the law relevant to the OCC in determining whether an employee of an operating subsidiary of a national bank can serve as an officer of an investment company, whether an operating subsidiary of a national bank can provide administrative services to open-end and closed-end investment companies, including proprietary mutual funds, and whether an operating subsidiary of a national bank can serve as an administrator for limited liability companies. There is nothing in these memoranda to suggest that they were undertaken by the government while acting in a capacity

similar to a "private party seeking advice to protect personal interests." These documents are not exempt from disclosure under the attorney-client privilege.

█ Since the only exemption claimed by the OCC in regard to Document 64 is the attorney-client privilege, the Court's finding that the privilege is inapplicable in this context results in disclosure of Document 64 to Plaintiffs. In regard to Document 68, the OCC also asserts the deliberative process privilege. For the reasons stated in regard to Documents 65 and 66, the Court finds the invocation of the deliberative process privilege insufficient under the circumstances. The Court finds the reasoning in *Coastal States* instructive:

> A strong theme of our opinions has been that an agency will not be permitted to develop a body of "secret law," used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as "formal," "binding," or "final. (p. 867)

Document 68 provides an example of the type of document which the public should have access to in order to understand the OCC's interpretation of federal banking law. Nowhere in its brief does the OCC claim that the memorandum inaccurately reflects the OCC's position on laws reviewed therein. The Court finds that Document 68 is not exempt under the deliberative process privilege, or the attorney client privilege, and therefore must be turned over to Plaintiffs.

### 4. Document 67

The documents marked Document 67 are a short memo noting the revisions—requested by the Chief Counsel of the OCC—which were made to the opinion letter issued by the OCC regarding Chase's proposed acquisition of two operating subsidiaries of US Trust and a short note from the Chief Counsel of the OCC regarding the memo. The OCC claims Document 67 is exempt under the attorney-client, deliberative process, and draft document privileges.

For the reasons given in regard to Document 64, the OCC's invocation of the attorney-client privilege is not persuasive.

█ The analysis of the draft document privilege is subsumed in the analysis of the deliberative process privilege as the draft status of a document is but one of the factors to consider in determining whether a document should be exempt under the deliberative process privilege. The mere fact that a document is a draft—or in the present case that a document makes reference to the content of a draft document—is not a sufficient reason to automatically exempt it from disclosure. As noted in the analysis of the deliberative process privilege in regard to Documents 65 and 66, the policy reasons for the existence of the privilege must be implicated in order for the Court to find withholding of information necessary. The OCC has made no claim that the contents of the draft document inaccurately reflect the OCC's position on the issue discussed therein nor has it alleged that disclosure of this document would inhibit the free flow of information among members of the OCC staff. The OCC has merely reiterated the legal parameters for considering a document potentially exempt under the deliberative process privilege; it has not shown why such an exemption is required given the content of the document in question. Accordingly, Document 67 must be released to the Plaintiffs.

### 5. Document 69

█ This document contains the "Comptroller of the Currency Supervisory Monitoring System (SMS) Ratings and Examination Data Profile." The OCC invokes the bank examination privilege to justify their failure to disclose this document to Plaintiffs. This privilege is codified in § 552(b)(8), which exempts from disclosure: "[documents] contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." The OCC states that this document is "a compilation of deliberative information garnered through the bank examination process [and thus] is subject to privilege." *See In re Subpoena Served Upon the Comptroller of Currency, and Secretary of Board of Governors,* 967 F.2d 630 (D.C.Cir.1992) (*"Fleet"*).

In *Fleet* the D.C. Circuit discusses the bank examination privilege:

> ... the bank examination privilege is firmly rooted in practical necessity. Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal. It is extensive in that bank examiners concern themselves with all manner of a bank's affairs: Not only the classification of assets and the review of financial transactions, but also the adequacy of security systems and of internal reporting requirements, and even the quality of managerial personnel are of concern to the examiners.
>
> . . . .
>
> Nonetheless, the discovery of bank examination information is not absolutely precluded. The bank examination privilege, like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material. Even when asserted to protect deliberative material, the privilege may be overridden where necessary to promote "the paramount interest of the Government in having justice done between litigants," or to "shed light on alleged government malfeasance," or in other circumstances "when the public's interest in effective government would be furthered by disclosure." (p. 634) (citations omitted)

The OCC claims that this document is not relevant to the Plaintiffs' consumer protection complaints and thus the public interest in disclosure of the document is small. However, the OCC does not show that the information contained in this document is deliberative rather than primarily factual. The OCC bears the burden of providing the Court with information sufficient for it to make an informed determination regarding what portion of the document is purely factual and what portion constitutes the OCC's own recommendations or opinions. Since the Court finds the document in question to be primarily factual, and since the OCC has not offered the court any information about the document which would dispute that finding, the OCC must disclose Document 69 to Plaintiffs.

## IV. REPRESENTATION OF INNER CITY PRESS/COMMUNITY ON THE MOVE

In a related proceeding, *Matthew Lee, et al. v. Board of Governors of the Federal Reserve System, et al.,* No. 94–4134 (November 8, 1995), the Second Circuit determined that one of the plaintiffs, Inner City Press/Community on the Move Homesteader's Association, could not be represented *pro se,* citing Local Rule 46(d)(2), *Eagle Associates v. Bank of Montreal,* 926 F.2d 1305, 1310 (2d Cir.1991), and *Jones v. Niagara Frontier Transportation Authority,* 722 F.2d 20, 22 (2d Cir.1983). The parties have not addressed this issue in the present proceeding. The parties should submit to the court, within fifteen days of the date hereof, briefs addressing this issue.

## V. STATUS OF DOCUMENTS DEEMED "OCC PROPERTY" BY THE FRB

In *Matthew Lee, et al. v. Board of Governors of the Federal Reserve System, et al.,* No. 94–4134 (November 8, 1995), Plaintiffs had access to the FRB's administrative record under 12 U.S.C. 1848 which provides:

> Any party aggrieved by an order of the Board may obtain review of such order in the United States Court of Appeals. . . . A copy of such petition shall be forthwith transmitted to the Board by the clerk of the court, and thereupon the Board shall file the record made before the Board . . .

Plaintiffs contend that included in the administrative record compiled in the court of the Chase/U.S. Trust merger approval process and filed with the Second Circuit by the Federal Reserve Board on July 24, 1995 are several documents upon which the FRB acknowledges that it relied but which it withholds from disclosure because the documents are "OCC property." The OCC has not included these documents in their administrative record, on the grounds that the OCC did

**460**

not refer to these documents in the course of its review. Plaintiffs contend that the OCC has not submitted to the Court and to Plaintiffs its entire administrative record, as it was required to do. The OCC contends that Plaintiffs have no rights to these documents:

Plaintiffs are not entitled to conduct discovery in order to supplement the OCC's already complete Administrative Record. Considering that the two agencies made different decisions, and focused on different issues and information, it should come as no surprise to Plaintiffs that the Board's record may contain documents not included in the OCC's record. (OCC's Reply Memo at 12)

The Second Circuit granted Petitioners' motion to compel the Federal Reserve Board to file the Administrative record "to the extent that the Board is ordered to lodge the missing portions of the record with this Court by November 15, 1995, with, if deemed appropriate, a properly filed motion to seal." A motion to seal was submitted to the Second Circuit but has not yet been ruled on.

The question of the propriety of disclosure of these documents is not before this court. The question would be properly before this court if, for example, Plaintiffs submitted a FOIA request for these documents which was denied, appealed within the OCC, and then appealed to the district court. Since Plaintiffs had access to the FRB's administrative record under 12 U.S.C. 1848, Plaintiffs never submitted a FOIA request for these documents. Given this, and in light of the pending Second Circuit decision on this matter, the Court declines to determine whether these documents must be released to Plaintiffs.

## VI. THE FDIC MOTION FOR SUMMARY JUDGMENT AND THE OCC MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

The Federal Deposit Insurance Corporation has filed a motion for summary judgment and the OCC has filed a motion to dismiss or, alternatively, for summary judgment. Unless otherwise agreed by the parties, Plaintiffs' opposition briefs shall be sub-

mitted as soon as possible but not later than March 15, 1996. The FDIC and the OCC reply briefs are due not later than 45 days after receipt of Plaintiffs' opposition brief. These briefs should address all relevant issues as upon receipt of the parties' briefs the court will conduct its comprehensive review of the administrative records of the FDIC and the OCC.

## VII. CONCLUSION

For the foregoing reasons, the Court finds that all documents withheld from Plaintiffs by the OCC are not exempt from disclosure under the Freedom of Information Act. Accordingly, Documents 1, 64, 65, 66, 67, 68 and 69 of the OCC's Administrative Record must be disclosed to Plaintiffs within 10 days of the date hereof. The parties must submit to the Court, within 15 days hereof, briefs addressing the propriety of Inner City Press/Community on the Move Homesteaders' Association *pro se* representation. The parties are to submit briefs on review of the administrative records as indicated above.

SO ORDERED.