Nancy GEORGE, Plaintiff,

v.

SIEMENS INDUSTRIAL AUTOMATION, INC., Siemens Energy & Automation, Inc., and Helmut Stadlbauer, individually and as an agent of defendant corporations, Defendants.

No. CIV. 94–27(MTB).

United States District Court, D. New Jersey.

Aug. 26, 1998.

John E. McDonald, Stark & Stark, P.C., Princeton, NJ, for Plaintiff.

Cynthia M. Jacob, David H. Ganz, Collier, Jacob & Mills, P.C., Somerset, NJ, for Defendants Siemens Industrial Automation, Inc. and Siemens Energy & Automation, Inc.

Vincent E. Reilly, McElroy, Deutsch & Mulvaney, P.C., Morristown, NJ, for Defendant Helmut Stadlbauer.

## OPINION

CHESLER, United States Magistrate Judge.

## I. INTRODUCTION

This matter was opened by the Court *sua sponte* to determine if any of the material contained in the *in camera* certifications of Kevin Paul Kovacs, Esq. (the "Kovacs Certification") and Nancy George (the "George Certification"), submitted to this Court in connection with Mr. Kovacs's motion to withdraw his appearance as Plaintiff's counsel pursuant to L.Civ.R. 102.1, should be disseminated by the Court to Defendants in this matter.[1] The parties consented to having the matter resolved by the undersigned, *see* 28 U.S.C. § 636(c), and an Order of Reference was entered by the Honorable Maryanne Trump Barry, U.S.D.J., on March 3, 1998.[2] The Court permitted the parties to submit briefs in this matter and heard oral argument on July 7, 1998. For the reasons set forth below, the information contained in paragraph five of the Kovacs Certification will be released to Defendants.

## II. BACKGROUND

Plaintiff, Nancy George, filed this action on January 3, 1994, alleging various causes of action including sex discrimination, violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.*, negligent infliction of emotional distress, intentional infliction of emotional distress, loss of quality of life, breach of implied contract and covenant of good faith and fair dealing, violation of the equal pay act, and negligent hiring and retention. *See* Second Amended Complaint ¶¶ 3–55. The defendants in this action are her employer and various officials including a direct supervisor and the manager of human resources. *See id.*

The case has had a long four and a half year history of discovery, mediation, and motion practice. Plaintiff's original attorney, Joseph H. Orlando, Esq., was relieved from his duties in this case on January 6, 1996. Plaintiff's second attorney, John F. Gleson, Esq., was relieved from his responsibilities in this matter on April 10, 1996. On March 23, 1998, Plaintiff's third lawyer, Kevin P. Kovacs, Esq., filed a motion with this Court to withdraw his appearance pursuant to L.Civ.R. 102.1.[3] That motion was granted by the Court on April 28, 1998. Plaintiff was given thirty days in which to find substitute counsel or she would be considered a *pro se* litigant. On June 5, 1998, Plaintiff's fourth and current attorney, John E. MacDonald, Esq., was substituted into this case.

When Mr. Kovacs filed his motion to withdraw his appearance, he submitted an *in camera* certification to this Court. Neither his client nor Defendants were privy to the exact information that was contained in the document. Plaintiff, in response to the motion and in anticipation of what the Kovacs Certification contained, submitted a letter

---

1. Pursuant to an order of this Court, the Kovacs Certification is filed with the Clerk of this Court under seal. Plaintiff, Nancy George, also filed an *in camera* certification in connection with Mr. Kovacs's motion to withdraw his appearance. Plaintiff's certification is also filed under seal pursuant to an order of this Court.

2. Section 636(c) of Title 28 states in relevant part that
   [u]pon the consent of the parties, a full-time United States magistrate [judge] ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or

courts he serves. [ ] Upon entry of judgment in any case referred under ... this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate [judge] in the same manner as an appeal from any other judgment of a district court.
28 U.S.C. § 636(c)(1) and (c)(3).

3. District of New Jersey Local Civil Rule 102.1 states in relevant part that "[u]nless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court." L.Civ.R. 102.1.

and an *in camera* certification to this Court. Plaintiff's attorney and counsel for Defendants did not receive a copy of Plaintiff's certification. The Court held oral argument on the motion April 27, 1998, and, after making certain that Plaintiff knew what her responsibilities would be if she did not find substitute counsel within thirty days, the Court granted Mr. Kovacs's motion.

On June 5, 1998, the Court held a status conference in this matter in which Plaintiff's new attorney participated. At that conference, the Court informed the parties that it was necessary to visit the current issue of whether the Court had any obligation to disclose to Defendants the *in camera* submission of Mr. Kovacs and the subsequent responsive *in camera* certification filed by Plaintiff. The Court asked Plaintiff's counsel to submit a short memorandum of law outlining Plaintiff's position on the matter. To avoid any potential prejudice to Plaintiff, the Court instructed counsel that any submission was to address the pending legal issue without reference to the factual allegations contained in the two certifications. Counsel from both sides submitted short briefs and the Court held a conference on the record on July 7, 1998, in which the issues were discussed.

### III. DISCUSSION

The principles involved in both the ethical consideration of client confidentiality and the privilege between attorneys and clients are the two most fundamental tenets of the attorney-client relationship. These principles have been recognized for several hundred years and very few exceptions to them exist. It is only in the most extreme circumstances that an exception will apply. The matter currently before the Court could conceivably be one of those extreme circumstances. Accordingly, the Court raised the present issue *sua sponte* and asked counsel for both sides to brief the legal issues. For the reasons set forth below, a portion of the Kovacs Certification will be released to Defendants.

### A. Standards

The applicable rules and privileges at issue in this matter are the attorney-client privilege and the work product doctrine.

### 1. Attorney–Client Privilege

■ The attorney-client privilege is the oldest privilege known in the common-law. *See United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989). Dating as far back as the 1600s, the attorney-client privilege was created to prevent the attorney from having to testify, under oath, against his client, because such testimony would violate the attorney's honor as a gentleman. 8 J. WIGMORE, EVIDENCE § 2290, at 542–43 (McNaughton rev.1961). Under the original scheme, the privilege belonged to the attorney. *Id.* at 542–44. Today, the privilege is recognized as the client's. *Id.* The client, then, determines whether a communication made to his or her attorney may be disclosed by the attorney, and has the authority to raise or waive the privilege. *Id.*

■ The United States Supreme Court has examined the application of the attorney-client privilege in many cases. *See, e.g., Jaffee v. Redmond*, 518 U.S. 1, 11, 116 S.Ct. 1923, 1929, 135 L.Ed.2d 337 (1996); *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49, 105 S.Ct. 1986, 1990–91, 85 L.Ed.2d 372 (1985); *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also* W. Joseph Nielsen, Note, *Privileged Communications*, 27 SETON HALL L. REV. 1123, 1123–26 (1997). Recognizing the attorney-client privilege as the "oldest of the privileges for confidential communications known to the common law," the Court reflected that its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389, 101 S.Ct. at 682. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.; see also Swidler & Berlin v. United States*, — U.S. —, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) ("The privilege is intended to encourage 'full and frank communication between attorneys and their clients and

thereby promote broader public interests in the observance of law and the administration of justice.' "); *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir.1979) ("the attorney-client privilege exists to foster disclosure and communication between the attorney and the client"). The Court has been careful, however, to indicate that no bright-line rule governs the applicability of the attorney-client privilege. *Upjohn*, 449 U.S. at 396–97, 101 S.Ct. at 686. Rather, courts should determine the applicability of the privilege on a case-by-case basis. *Id.*

■■■■ The Third Circuit has enumerated the traditional elements of the privilege. First, the privilege applies only if the asserted holder of the privilege is or sought to become a client. *In re Grand Jury Investigation*, 599 F.2d at 1233 (citing *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)). Second, the person to whom the communication was made must be a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer. *Id.* Next, the communication must relate to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort. *Id.* Finally, the privilege must be claimed and not waived by the client. *Id.; see also Rhone–Poulenc*, 32 F.3d at 862; *Arcuri v. Trump Taj Mahal Assoc.*, 154 F.R.D. 97, 101–02 (D.N.J.1994); N.J.S.A. 2A:84A–20(1) (West 1994); N.J.R.E. 504(1) (West 1994). Courts have found that "because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.' " *In re Grand Jury Investigation*, 599 F.2d at 1245; *see also United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983) ("[T]he scope of the privilege should be 'strictly confined within the narrowest possible limits.' ").

■■■ There are a limited number of exceptions to the privilege. *See, e.g.,* N.J.S.A. 2A:84A–20(2) (West 1994); N.J.R.E. 504(2) (West 1994). The most recognized exception to the privilege is the "crime-fraud" exception. Any communication between an attorney and client in the course of legal service sought or obtained in aid of the commission of a crime or fraud is not privileged. N.J.S.A. 2A:84A–20(2)(a) (West 1994); N.J.R.E. 504(2)(a) (West 1994); *see also Swidler & Berlin*, 118 S.Ct. at 2087; *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985) (applies to crime, fraud, or other misconduct); *Irving Trust Co. v. Gomez*, 100 F.R.D. 273, 277 (S.D.N.Y.1983) (applies to fraud or any other intentional tort); *Diamond v. Stratton*, 95 F.R.D. 503, 505 (S.D.N.Y.1982) (intentional infliction of emotional distress); *Dry Branch Kaolin Co. v. Doe*, 263 N.J.Super. 325, 329, 622 A.2d 1320, 1322 (App.Div. 1993). Another recognized exception is the "at-issue" exception. When a party to a lawsuit puts protected information at issue by making it relevant to the case, and the application of the privilege would deny the opposing party access to information vital to its defense. *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). A third highly recognized exception is the "self-defense" exception. Counsel may waive client's privilege in order to defend himself against accusations of wrongful conduct. *See, e.g.,* N.J.S.A. 2A:84A–20(2)(c); N.J.R.E. 504(2)(c); *see also Meyerhofer v. Empire Fire & Marine Ins.*, 497 F.2d 1190, 1194–96 (2d Cir.1974), *cert. denied,* 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Secs. Litig.*, 120 F.R.D. 687, 692 (C.D.Cal.1988).

### 2. Work Product Doctrine

■■■ The work product doctrine provides protection to materials prepared by an attorney or his or her agent in anticipation of litigation or for use in trial. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purposes and protection of the work product doctrine, however, differ from those underlying the attorney-client privilege. *See United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The work product doctrine encour-

ages careful and thorough preparation by the attorney, whereas the attorney-client privilege focuses on encouraging the client to fully disclose all information to his or her attorney. *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1097 (D.N.J.1996). The Supreme Court in *Hickman* clarified the fundamental principles of the work product doctrine. The Court stated that

> [h]istorically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94. The doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3) and states in pertinent part that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). The Supreme Court has described the doctrine as an "intensely practical one, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170. Unlike the attorney-client privilege, however, which is absolute, the work-product privilege is qualified. *Id.* at 239, 95 S.Ct. at 2170. The qualified privilege depends on the information being sought and the adversary's need for the information. *Hickman*, 329 U.S. at 512, 67 S.Ct. at 394.

The party asserting work product protection has the burden of demonstrating that the documents were "prepared in anticipation of litigation." *Conoco, Inc. v. United States Dep't of Justice*, 687 F.2d 724, 730 (3d Cir.1982). The mainstay of work product protection lies in the deceivingly simple phrase, "in anticipation of litigation." *See, e.g., United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir.1990) ("[t]he question whether a document was prepared in anticipation of litigation is often a difficult factual matter"); *Leonen v. Johns–Manville*, 135 F.R.D. 94 (D.N.J.1990) ("[t]he phrase, 'anticipation of litigation' is incapable of precise definition").

To determine whether a document was "prepared in anticipation of litigation," the appropriate inquiry is "whether in

light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir.1993) (citing *Rockwell,* 897 F.2d at 1266); *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979). Furthermore, litigation does not need to be imminent as long as the main purpose behind the creation of the document was to aid in possible future litigation. *Rockwell,* 897 F.2d at 1266; *United States v. El Paso Co.,* 682 F.2d 530, 542–43 (5th Cir. 1982), *reh'g denied,* 688 F.2d 840 (5th Cir. 1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984); *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981), *reh'g denied,* 645 F.2d 71 (5th Cir.1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). The mere possibility of future litigation, however, is not sufficient to meet the "in anticipation of litigation" standard. *Leonen,* 135 F.R.D. at 97. The work product doctrine clearly precludes the protection of documents created in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for any nonlitigation purpose. *Rockwell,* 897 F.2d at 1266.

Additionally, like any other qualified privilege, it may be waived by the holder of the privilege and there are exceptions to the doctrine. *Id.; Westinghouse v. Republic of the Philippines,* 951 F.2d 1414, 1424–25 (3d Cir.1991); *In re Subpoenas Duces Tecum (Fulbright & Jaworski),* 738 F.2d 1367 (D.C.Cir.1984); *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1980); *Zapata v. IBP, Inc.,* 175 F.R.D. 574, 577 (D.Kan.1997); *Maertin v. Armstrong World Indus., Inc.,* 172 F.R.D. 143, 147–48 (D.N.J.1997); *Harding,* 914 F.Supp. at 1098. For example, the crime-fraud exception and the at-issue exception explained above are also applicable to the work product doctrine. *See, e.g., In re*

*Sealed Case,* 107 F.3d 46, 51 (D.C.Cir.1997) (crime-fraud exception); *In re Grand Jury Proceedings,* 102 F.3d 748, 751 (4th Cir.1996) (crime-fraud exception); *In re Grand Jury Proceedings,* 87 F.3d 377 (9th Cir.1996) (crime-fraud exception), *cert. denied sub nom. The Corp. v. United States,* — U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996); *In re Richard Roe, Inc.,* 68 F.3d 38, 39–40 (2d Cir.1995) (crime-fraud exception); *In re Grand Jury Proceedings,* 43 F.3d 966, 972 (5th Cir.1994) (crime-fraud exception); *Cox v. Administrator United Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir.1994) (crime-fraud exception), *opinion modified on reh'g,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *In re Grand Jury Proceedings,* 604 F.2d 798, 802–03 (3d Cir.1979) (crime-fraud exception); *see also Insurance Corp. of Ireland, Ltd. v. Board of Trustees of Southern Ill. Univ.,* 937 F.2d 331, 334, n. 3 (7th Cir. 1991) (at-issue exception); *Pfohl Bros. Landfill Lit.,* 175 F.R.D. 13, 28 (W.D.N.Y.1997) (at-issue exception); *Bowne of N.Y. City, Inc. v. AmBase Corp.,* 150 F.R.D. 465 (S.D.N.Y.1993) (at-issue exception). Likewise, the privilege can be waived through certain types of disclosures to the opposing and third parties. *Westinghouse,* 951 F.2d at 1428.

Finally, the qualified immunity enjoyed by the work product doctrine can be overcome upon a showing of substantial need and undue hardship.[4] *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Conoco, Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730 (3d Cir.1982). Courts require a party seeking to overcome the work product protection to show that they failed at all attempts to discover the material through alternative sources. *See Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1255 (3d Cir.1993); *In re Grand Jury,* 633 F.2d 282, 290 (3d Cir.1980).

4. There is a distinction between "ordinary" work product and "opinion" work product. *See In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977). While the privilege on ordinary work product can be overcome on a showing of substantial need and undue hardship, opinion work product is afforded an almost absolute protection from

discovery. *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 94 (3d Cir.1992); *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 801 n. 4 (3d Cir.1979).

## B. "Paragraph Five"

As mentioned above, the parties were instructed to submit papers outlining their positions on whether or not the Court has an obligation to disclose the information contained in the *in camera* submissions. Plaintiff argues that all of the information contained in both the Kovacs Certification and the George Certification falls within the protection of the attorney-client privilege and/or the work product doctrine and should, therefore, not be disclosed to Defendants. Defendants, although not aware of the precise subject matter of the certifications, remind the Court that both privileges can be waived and that there are several exceptions to each of them.

▮ The Court has carefully reviewed both the Kovacs and George certifications and agrees with Plaintiff's arguments about a majority of the information contained in the certifications. The court does not, however, agree with Plaintiff's contention that paragraph five of the Kovacs Certification ("Paragraph Five") is privileged. First, it is not protected by the attorney-client privilege because the information contained in Paragraph Five deals with conversations between Mr. Kovacs, his associate, Kathleen Devlin ("Devlin"), and Plaintiff's former psychiatrist, Dr. Kenneth Lichtman ("Lichtman"). Because this communication was not between an attorney and his or her client or potential client, the privilege does not apply. *See In re Grand Jury Investigation*, 599 F.2d at 1233.

▮ Additionally, this information is not covered by the work product doctrine. Paragraph Five recounts an oral conversation between Devlin and Lichtman and an oral conversation between Kovacs and Lichtman after Lichtman was deposed on February 27, 1998. All Paragraph Five amounts to is a recitation of oral communications between Plaintiff's attorneys and a fact witness. This is not material that was prepared in anticipation of litigation and is therefore not afforded any privilege. *See Ziemann v. Burlington*

*County Bridge Comm'n*, 155 F.R.D. 497, 503 (D.N.J.1994).

▮ Where relevant and non-privileged facts are contained in an attorney's files or are known by that party's fact witnesses, and where discovery of this information is essential to preparation of the opposing party's case, such information is clearly discoverable. *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280 (D.Neb.1989). Any contrary rule would result in the "liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure [being] stripped of their meaning." *Hickman*, 329 U.S. at 511–12, 67 S.Ct. at 394.

▮ The material contained in Paragraph Five is nothing more than facts about Plaintiff's mental state. This Court has previously held that Plaintiff has put her psychological condition at issue in this case. Therefore, Defendants were permitted access to the medical records of her doctors and mental health providers. Accordingly, the material in Paragraph Five is not protected by any privilege.

▮ Assuming, however, that the material in Paragraph Five was covered by the work product doctrine,[5] the demonstration of need for the material is so compelling that disclosure to Defendants is necessary. As previously stated, under Rule 26, the protection of the work product doctrine may be overcome if the party seeking discovery demonstrates a substantial need for the materials and that it is unable without undue hardship to obtain their equivalent by other means. *Ward v. Maritz*, 156 F.R.D. 592, 597 (D.N.J. 1994); *Leonen v. Johns–Manville*, 135 F.R.D. 94, 96 (D.N.J.1990). It is clear to this Court that the information contained in Paragraph Five is material that Defendants undoubtedly need to prepare an adequate defense. Without receiving the information, Defendants would be at an obvious disadvantage. Moreover, Defendants, at this late stage of the litigation, would suffer a great deal of undue hardship trying to obtain the equivalent information from other sources. At this point in time, Defendants are not

---

**5.** If this material were work product, it would be considered "ordinary" work product and there-fore would be afforded only a qualified immunity.

even aware of what type of information Paragraph Five contains. They would be forced to speculate on what the information is and hypothesize about what other sources they could obtain it from. This would certainly lead to a wild goose chase that would waste time, money, and judicial resources.

Additionally, because the Court is aware of the material contained in the certifications, anything short of disclosing the information to Defendants will result in the Court being a party to the perpetration of a fraud. The Court is charged with upholding the honesty and integrity of the judiciary and the judicial system. *See* Code of Jud. Conduct, Canon One; New Jersey RPC 3.3(a).[6] It is impossible for the Court to carry out this duty while being aware of a fraud. Therefore, the only remedy available to the Court is disclosure to all parties in the action. Accordingly, the information contained in Paragraph five will be disclosed to Defendants.

### C. The Balance of the Submissions

The Kovacs Certification covers twelve type-written pages with twenty-one numbered paragraphs. Additionally, there are four numbered exhibits attached to the certification. The George Certification covers eight type-written pages with eleven numbered sections. It likewise contains four numbered exhibits. This Court has spent a good deal of time reviewing the certifications and the attached exhibits submitted by Mr. Kovacs and Ms. George. Additionally, the Court gave both sides in this litigation time to present written and oral arguments outlining their position on whether or not this Court should disclose certain information contained in these certifications.

After a thorough review of the additional material contained in the certifications, the Court concludes that this information is protected by the attorney-client privilege and no exception to that privilege applies. Accordingly, those portions of the submissions will remain under seal. The Court will state, however, that even though this material is privileged, it causes a great deal of concern. The Court cautions both sides in this action to be mindful of their ethical obligations under both New Jersey RPC 1.6[7] and New Jersey RPC 3.3. Counsels' obligations under these rules are significant and should not be taken lightly.

### IV. CONCLUSION

For the reasons set forth above, the Court will unseal Paragraph Five of the Kovacs Certification and disclose this material to Defendants. All other portions of the Kovacs Certification and all of the George Certification will remain under seal pursuant to this Court's prior orders.

---

6. Canon One of the New Jersey Code of Judicial Conduct states in relevant part that

    [a]n independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

    N.J.Code of Jud. Conduct, Canon One. Additionally, New Jersey RPC 3.3 states in relevant part that "a lawyer shall not knowingly ... fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting an illegal, criminal or fraudulent act by the client." New Jersey RPC 3.3(a)(2).

7. New Jersey Rule of Professional Conduct 1.6 states in relevant part that

    A lawyer shall reveal ... information [relating to representation of a client] to the proper authorities, as soon as, and to the extent the lawyer reasonably believes necessary, to prevent the client ... from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to perpetrate a fraud upon a tribunal.

    New Jersey RPC 1.6(b)(2).