The BLACK & DECKER
CORPORATION,
Plaintiff,

v.

UNITED STATES of America, Defendant.

No. WDQ–02–2070.

United States District Court,
D. Maryland.

Sept. 15, 2003.

Harry A. Pogash, Black and Decker Corporation, Towson, MD, Herbert Odell, Law Office, Bala Cynwyd, PA, John Edward McCann, Jr., Miles and Stockbridge PC, Baltimore, MD, Philip Karter, Miller & Chevalier Chartered, Bala Cynwyd, PA, for The Black & Decker Corporation.

Thomas M. DiBiagio, Baltimore, MD, Angelo A. Frattarelli, United States Department of Justice, Lindsey W. Cooper, United States Department of Justice, Washington, DC, for United States.

### MEMORANDUM AND ORDER

GESNER, United States Magistrate Judge.

This case has been referred to the undersigned for the resolution of discovery disputes pursuant to 28 U.S.C. 636(b) and Local

Rule 301. Currently pending is defendant's motion to compel production of documents, plaintiff's opposition, defendant's reply, defendant's supplemental submission, plaintiff's response, and supplemental submissions from both parties requested by the undersigned. (Paper Nos. 25, 24, 26, 38, 41, 46, and 47). The discovery dispute between the parties involves the applicability of the attorney-client privilege and the work product doctrine to 62 (originally 63) documents relating to the business transaction which underlies this lawsuit. (Paper No. 26 at 2).

## I. *Background*

In 1998, plaintiff, Black & Decker Corporation ("B & D"), began to explore the possibility of establishing Black & Decker Health Care Management, Inc. to manage the health care benefits of plaintiff's domestic employees and retirees as well as retirees from its Canadian operations. (Paper No. 24 at 5). The creation of this "special purpose entity" required a series of transactions in which the plaintiff and its affiliates exchanged money, stock, and liabilities with the special purpose entity. (Paper No. 25 at 2). As a result of those transactions, the plaintiff claimed a large capital loss and a total federal tax refund of approximately 57 million dollars for the tax years 1995 through 2000. (*Id.* at 1). The plaintiff filed for the refund on December 12, 2001. (Paper No. 1 at 3). After waiting six months without receiving the requested refund, plaintiff brought this action on June 19, 2002, pursuant to IRC § 6532(a)(1). (*Id.*).[1]

During discovery, defendant sought documents related to the transaction from both plaintiff and Deloitte & Touche ("D & T"), the accounting firm retained by plaintiff for advice concerning the transaction. (Paper No. 25 at 3). Plaintiff refused to produce a number of documents that included communications between plaintiff's in-house tax attorneys and D & T. (*Id.*). After discussions between counsel, the number of documents

was narrowed to 63 documents. (Paper No. 26 at 2). After reviewing the parties' initial submissions, I requested that plaintiff provide the documents in question for *in camera* review. (Paper No. 30).

Perhaps the most significant document in dispute was Item # 11 on the final privilege log, which has been referred to as the "long opinion" prepared by D & T for plaintiff. By letter dated August 8, 2003, counsel for plaintiff advised me that they had decided to produce this document to the defendant, thereby waiving the attorney-client privilege with respect to this particular opinion letter, because it would be plaintiff's intention to rely on this document as a defense to any claim for penalties by the government against plaintiff. Plaintiff conditioned its production of the long opinion on an agreement that the defendant would not assert that such disclosure gives rise to a waiver over the subject matter of any other documents claimed to be privileged (and which remain the subject of the motion now pending.)

On August 19, 2003, a telephone hearing was held regarding the motion. By memo to counsel dated August 20, 2003, I asked the parties for supplemental briefing on the issue of waiver of the attorney work product doctrine which they have since provided. In addition, I have conducted an *in camera* review of the 62 documents[2] at issue and have considered the entire record in this case, including the parties' pleadings and the arguments advanced during the telephone hearing. For the reasons set forth below, Defendant's Motion to Compel is denied.

## II. *Discussion*

### A. *The Applicability of the Attorney-Client Privilege*

■ Plaintiff's first argument is that the documents in question are protected by the attorney-client privilege because the purpose

---

1. The IRS audit relating to this transaction is ongoing.

2. The 62 documents are comprised of 20 documents (excluding the long opinion which will be produced by plaintiff) withheld by plaintiff ("the

B & D documents") and 42 documents withheld by D & T at the request of plaintiff ("the D & T documents"). Based on my review of the documents, I note that several of D & T documents are duplicates of the plaintiff's documents.

of the communications between D & T and plaintiff was to support plaintiff's in-house attorneys in the preparation of legal advice to their client (plaintiff's management) regarding the transaction at issue. Defendant argues that the communications between plaintiff and D & T are not protected by the attorney-client privilege because D & T was providing tax advice, not legal advice. (Paper No. 25 at 4). Even if protected, defendant argues that plaintiff has waived the privilege by producing the short opinion letter relating to the transaction. (*Id.* at 5). Plaintiff responds that the privilege has not been waived by the release of the short opinion letter because that document was never intended to be confidential, as opposed to the long opinion letter. (*Id.* at 14).

█ As is firmly established, the attorney-client privilege protects confidential communications between a client and an attorney for the purpose of obtaining legal advice. Beginning with *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961), several courts have recognized that the attorney-client privilege may protect exchanges between the client and an accountant when the accountant enables communication with the attorney by "translating" complex accounting concepts. *Id.* at 921–22.[3]

█ Cases decided after *Kovel* have narrowly interpreted this concept of derivative privilege. For example, in *United States v. Adlman,* 68 F.3d 1495, 1500 (2d Cir.1995), the Second Circuit considered the scope of *Kovel* as it applied to documents created as part of tax consulting services provided by an accounting firm. In that case, Sequa Corporation's counsel, Adlman, consulted with Sequa's accounting firm, Arthur Anderson, ("AA") concerning a transaction proposed by Sequa. *Id.* at 1497. The court held, "[i]f the facts were that [counsel] furnished information to [the accountant] to seek the [accountant's] expert advice on the tax implications of the proposed transaction, no privilege would apply." *Id.* at 1500. Subsequent cases have maintained this focus on the nature of the work performed by the accountant. *See*

*United States v. Ackert,* 169 F.3d 136, 139–40 (2d Cir.1999) (because the third party's role was not as translator or interpreter of client communication, *Kovel* did not shield the discussions); *see also United States v. Chevron-Texaco Corporation,* 241 F.Supp.2d 1065, 1072 (N.D.Cal.2002) (privilege does not apply where accountant is hired merely to give additional legal advice about complying with the tax code even where it assists the attorney in advising the client). On the other hand, if the accountant is needed to facilitate communication between the client and the attorney, then the communications with the accountant are protected by the privilege. *Ackert,* 169 F.3d at 139.

█ Several factors are relevant to determining the applicability of this derivative privilege: 1) to whom was the advice provided—counsel or the client; 2) where client's in-house counsel is involved, whether counsel also acts as a corporate officer; 3) whether the accountant is regularly employed as the client's auditor or advisor; and 4) which parties initiated or received the communications. *See Adlman,* 68 F.3d at 1500; *ChevronTexaco,* 241 F.Supp.2d at 1072. An application of those factors to this case do not compel the clear conclusion that D & T was needed to facilitate communications between plaintiff and their attorneys. First, the communications here involved discussions among plaintiff, D & T, in-house attorneys at both, and individuals at B & D who do not appear to be attorneys. While the final opinion letters were directed to plaintiff's general counsel, Charles Fenton, the bulk of the exchanges with D & T did not involve him. Second, the primary counsel involved in the advice process, Harry Pogash, is also a corporate officer (VP of taxes). Third, a factor militating in favor of plaintiff on its privilege claim, D & T was not regularly employed by plaintiff. Finally, as to which parties initiated or received the communications, many of the communications were directed by the accountants to various individuals at B & D which could undercut the notion that B & D's in-

---

3. In 1998, Congress created a limited privilege for accountant-client communications. *See* 26 U.S.C. § 7525 (2002). Neither party, however, has suggested that this statute applies to this case.

house counsel was relying on the accountant to understand what the client was saying.

In addition to analyzing these factors and considering all of the case law cited by the parties, I have reviewed the documents at issue. In my opinion, the documents reveal that D & T was not providing "translation" services for in-house counsel. Rather, D & T was providing hybrid advice to plaintiff—tax and business advice which by its nature, had a legal component. Given the complexity of the transactions at issue, it is understandable why plaintiff wanted to, and did, retain the services of D & T to help evaluate the tax and business implications of the transaction. The record does not support the conclusion that D & T's advice—or the documents at issue—were provided primarily to assist the plaintiff's attorneys in rendering legal advice. Therefore, the derivative privilege protection recognized by *Kovel* and subsequent cases is not applicable to the documents at issue.[4]

**B. *Application of the Work Product Doctrine and Waiver Thereof***

▄▄▄ Plaintiff also asserts that the documents in question are protected from disclosure pursuant to the attorney work product doctrine. The work product doctrine protects from disclosure documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Defendant concedes the documents were prepared in anticipation of litigation and that, therefore, the work product doctrine applies. Defendant maintains, however, that plaintiff has waived the protection of the work product doctrine by declaring its intention to rely upon the advice of D & T to avoid the imposition of penalties by the IRS.[5] Specifically, defendant

asserts that it is entitled to all communications between plaintiff and D & T because plaintiff has placed D & T's advice "at issue" in this case. Therefore, defendant argues that it is entitled to determine whether there is information contained in the documents which is inconsistent with the advice given by D & T, information which would potentially be helpful to refute plaintiff's good faith and reasonable reliance on D & T's advice. Plaintiff responds that there has been no waiver because they are not relying on any advice other than that contained in the opinion letters produced (or to be produced) to the government.

Prior to our telephone hearing, neither party had meaningfully briefed the issue of waiver of attorney work product. As a result, much of the focus of the telephone hearing held on August 19, 2003 was on the waiver question. After the conclusion of the hearing, by memo of August 20, 2003, I requested supplemental briefing from the parties on the waiver issue to include a discussion of the distinction between fact and opinion work product. The parties provided the requested supplemental briefs. In addition, plaintiff, at my request, provided me with an *ex parte* submission detailing their position as to whether the *in camera* documents contained opinion or fact work product.[6]

Relying on *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir.1988) and a few other cases, defendant summarily concludes that the Fourth Circuit recognizes an implied waiver of work-product when a party places that work product *in issue* such that disclosure of all of the documents and communications between plaintiff and D & T are subject to disclosure, regardless of whether they are opinion or fact work product. (Paper No. 46 at 2, citing *George v. Siemens Industrial*

---

4. Because I have concluded that the documents are not protected by the attorney-client privilege, I will not address the issue of waiver of the attorney-client privilege raised by the parties in their pleadings.

5. This declared intention to rely on the advice of D & T was made by plaintiff in the context of the audit thus far, not in this litigation. During our telephone hearing, the parties did not appear to be concerned that the issue was being prema-

turely addressed in this litigation since penalties have not yet been sought in this case.

6. Plaintiff has proffered that 53 of the 63 documents contain opinion work product while 10 documents constitute fact work product. (Paper No. 47 at 7). Both parties argue that the distinction between the two types of work product is not relevant to the pending issue.

*Automation, Inc.,* 182 F.R.D. 134, 139 (D.N.J.1998)). Plaintiff maintains that the disclosure of the short opinion letter here does not give rise to a subject matter waiver. Further, plaintiff argues that, even if it did, the documents which constitute opinion work product would not be subject to disclosure because the Fourth Circuit accords them near absolute protection. Plaintiff also notes that fact work product is provided with significant protection. (Paper No. 47 at 4). As to the fact work product documents at issue (10 in number), plaintiff asserts they are not subject to disclosure because there has been no waiver of the work product by the mere production of the short opinion letter.

■ The case law clearly recognizes that there may be a waiver of the attorney work product doctrine where the information has been placed "at issue" by the holder of the privilege. *See George,* 182 F.R.D. at 141 (citing authority). The question here is the breadth of that waiver—whether it is limited to the precise advice given or extends to any and all materials related to the advice. Defendant has not directed me to, nor have I located, any case law which would support the broad-based, subject matter waiver urged here by defendant, regardless of whether the work product is deemed opinion or fact work product.[7]

■ Indeed, the case law clearly notes an important distinction between these two types of work product. *Nutramax Laboratories v. Twin Laboratories, Inc.,* 183 F.R.D. 458, 462 (D.Md.1998). "[O]pinion work product" has been characterized as "absolutely immune" or "nearly absolutely immune" from discovery. *Id., (citing In re Allen,* 106 F.3d 582, 607 (4th Cir.1997)). While the case law recognizes that even opinion work product

may be waived, it can only be waived by actions that are consistent with a "conscious disregard of the advantage that is otherwise protected by the work product rule." *Id.* at 464 (quoting authority). "The work product doctrine, therefore, is both broader and more robust than the attorney-client privilege, as it does not appear that it can be waived by inadvertent disclosure in the same way that the attorney-client privilege can." *Id.* at 464 n. 10; *see also* Paper No. 47 at 5–7. While the waiver of fact attorney work product may extend to all fact work product of the same subject matter, the waiver will not extend to opinion work product except in extreme circumstances. *In re Martin Marietta Corp.,* 856 F.2d at 627.[8]

Contrary to defendant's sweeping assertions, the circumstances of this case do not warrant the extraordinary finding that the protections generally afforded opinion work product have been waived. Defendant has not offered any legal or factual support for the conclusion that the opinion work product at issue here should be subject to a wholesale, subject matter waiver.[9] In that regard, I have compared plaintiff's *ex parte* submission with the documents I have examined *in camera* and find plaintiff's designations of the documents as fact or opinion work product to be appropriate. Accordingly, I find that the 53 documents designated as opinion work product are not subject to disclosure.

■ There are 10 remaining documents which constitute fact work product. Because defendant maintains that the distinction is irrelevant, defendant has not discussed whether a different test for disclosure applies to the fact work product documents. On the other hand, plaintiff argues that the distinction is only relevant where there has been a

---

7. During the hearing, defendant maintained that the distinction was irrelevant because plaintiff had chosen to rely on the advice of its accountants and, therefore, placed that advice "at issue." Defendant has not directed the court to any case law supporting its position.

8. In the absence of a waiver warranting disclosure of the fact work product, defendant might otherwise be entitled to the documents upon a showing of "substantial need" in the preparation of the requesting party's case and that the requesting party "is unable without undue hard-

ship to obtain the substantial equivalent of the material by other means." Fed.R.Civ.P. 26(b)(3). Defendant has made no attempt to make this showing.

9. During the hearing, defense counsel opined that if plaintiff *purposefully* disregarded advice from D & T that was contrary to the advice ultimately given by D & T, that defendant should have access to that information as it would be relevant to plaintiff's good faith reliance. Defense counsel acknowledged that it was unlikely that such a "smoking gun" existed.

 

waiver of work product protection and, here, there has been no waiver because plaintiff always intended to disclose the letter to the IRS and never intended it to be protected by the work product doctrine.[10]

The court is not willing to accept plaintiff's line of reasoning. Taken to its logical conclusion, plaintiff's position would allow a party to rely on advice of a professional, prepare a brief, written summary of that advice for disclosure to its adversary, and then automatically preclude access to any other documents on the same subject matter merely by asserting that the written summary was always intended for disclosure. In the court's view, this result would be inconsistent with Fourth Circuit law recognizing that there may be a subject matter waiver as to non-opinion work product on the same subject. *Id.* at 625.

Although I do not accept this particular argument advanced by plaintiff, I do not find that the 10 remaining documents are subject to disclosure. Unlike the broad based waiver in the *Martin Marietta* case, plaintiff, to date, has only indicated that it will rely on specific advice offered by D & T as set forth in the short opinion letter. Plaintiff has made this statement to the IRS in the context of the IRS' audit, not in the context of this case. Indeed, defendant has not yet sought penalties against plaintiff in this case. Thus, while plaintiff's reliance on D & T's advice may allow defendant access to other information or documents beyond the short opinion letter, I do not believe that any resulting waiver is so comprehensive as to allow wholesale access to all communications between plaintiff and D & T. Based upon my review of the 10 documents at issue, I conclude that they relate to the same "subject matter" as the D & T opinion only in the broadest sense of that phrase, but do not relate in any substantive way to the subject matter of the short opinion letter.

### III. *Conclusion*

For the foregoing reasons and based upon my consideration of the entire record in this case, I do not believe that the interests underlying the attorney work product doctrine are best served by the broad based, subject matter waiver argument advanced by the defendant in this case. The defendant now has both the short and long opinions of D & T. And these are the opinions upon which plaintiff apparently will rely if, and when, the government seeks penalties in this case. Having reviewed the remainder of the documents, I do not believe that plaintiff, as defendant contends, is using the work product doctrine as both a sword and a shield or that fairness and consistency require disclosure. Accordingly, defendant's motion to compel is denied.

---

10. As noted above, the parties have agreed not to consider the disclosure of the long opinion letter as a waiver. During the telephone hearing, both parties were quite forceful in their request that the court honor their agreement and not raise the waiver issue on its own. For the purposes of the pending motion, the undersigned will accept the parties' agreement.