**UNITED STATES of America, Plaintiff,**

v.

**Robert M. ERNSTOFF, d/b/a Westfield Manor Apartments, Leslie Thompson, and Jean Thompson, Defendants.**

**Civ. No. 97–3115(JCL).**

United States District Court, D. New Jersey.

Oct. 16, 1998.

Joan A. Magagna, Jennifer C. Cass, Je Yon Jung, United States Department of Justice, Civil Rights Division, Housing & Civil Enforcement Section, Washington, DC, for Plaintiff.

Jonathan E. Levitt, Charles Xavier Gormally, Brach, Eichler, Rosenberg, Silver, Berstein, Hammer & Gladstone, P.C., Roseland, NJ, for Defendants.

## OPINION

CHESLER, United States Magistrate Judge.

## I. INTRODUCTION

This matter comes before the Court on the application of Defendants, Robert M. Ernstoff, d/b/a Westfield Manor Apartments, Leslie Thompson, and Jean Thompson ("Defendants"), to compel Plaintiff, the United States of America ("Plaintiff"), to provide discovery. Defendants' application was referred to the undersigned by the Honorable John C. Lifland, U.S.D.J. The parties were directed to submit letter briefs on the issues in contention and the Court heard oral argument during a telephone conference on the record on July 29, 1998. For the reasons set forth below Defendants' application will be granted.

## II. BACKGROUND

In May of 1995, the Department of Justice began testing the rental markets in Westfield in order to identify any race discrimination against African Americans. One of the multi-family housing units selected for testing was Westfield Manor Apartments ("WMA"). The department conducted six rental tests at WMA in order to determine whether the complex was employing any discriminatory practices in their rental decisions.[1]

After the rental tests were completed, the Department of Justice concluded that WMA was in fact using discriminatory practices in their selection of tenants. Accordingly, the government initiated this action, pursuant to 42 U.S.C. § 1981,[2] by filing a complaint in the United States District Court for the District of New Jersey.

On May 28, 1998, Defendants requested that they be provided with copies of certain documents known as Test File Review Forms and the summary memoranda compiled by the government which analyzed the data in these forms. The Test File Review Forms contain each test coordinators' preliminary analysis of the evidence obtained through the tests conducted at a specific location. *See* Lee Decl. ¶ 9. In these documents, each test coordinator identifies and discusses the differences that they observed in the treatment that the testers of different races received during the visits to a particular housing development. *Id.* The analysis contained in these documents initially serves as a basis for the Housing & Civil Enforce-

---

1. The first test was conducted by the North Jersey Fair Housing Council pursuant to a contract with the Civil Rights Division of the Department of Justice. All of the remaining tests were conducted by the Department of Justice using volunteer federal employees as "testers."

2. Section 1981 of Title 42 States in relevant part that

   [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   42 U.S.C. § 1981(a).

ment Section to determine whether to authorize additional testing at a given location.

The data compiled from these forms is the basis for a separate summary memorandum outlining the findings in one particular housing complex. *Id.* ¶¶ 6, 11. This document incorporates all of the analysis contained in the individual Test File Review Forms, "summarizes the differences in treatment between the black and white testers over the course of the testing noted by the test coordinator, and states [his or] her opinion as to whether or not those differences noted indicate, in [his or] her judgment, the existence of a pattern of differential treatment by the housing provider." *Id.* ¶ 11.[3]

The various test coordinators regularly prepare these forms and memoranda in order to assist the Civil Right Division in determining whether suit should be filed against housing providers pursuant to 42 U.S.C. § 3514(a). *Id.* ¶ 12. Initially, the Chief or Deputy Chief of the Housing & Civil Enforcement Section reviews all these documents to determine whether to send them to an attorney in the Section to prepare a litigation recommendation. *Id.* When these documents are forwarded to an attorney in the Housing & Civil Enforcement Section, the attorney would review all of the documents and, in substantial measure, rely on the analysis contained therein in deciding whether to recommend that a lawsuit be filed. *Id.* The Justice Department, through the declaration of Bill Lann Lee, Esq., the Acting Assistant Attorney general in the Civil Rights Division, asserts that the disclosure of the materials "would hinder the free flow of ideas and opinions that should precede the Department of Justice's procedure for reviewing testing evidence and determining whether to initiate testing." *Id.* ¶ 13. "In addition, disclosure of the Summary of Testing could reveal information about the Department's confidential internal law enforcement procedures and policies used in the testing program and

could compromise the effectiveness of the testing program." *Id.*

On June 5, 1998, Plaintiff asserted the work product privilege and the deliberative process privilege in connection with these documents. On June 11, 1998, Defendants submitted a letter application requesting a telephone conference with this Court so that the privilege issues could be resolved. A telephonic conference was held on the record on June 17, 1998, during which the Court requested that Plaintiff present a certification by someone at the Department of Justice who had personal knowledge as to at what point in time litigation could reasonably have been anticipated in this case.

Responding to the Court's request, the government submitted a letter brief on June 30, 1998, along with a certification of Fred Freiberg of the Department of Justice Civil Rights Division. The Freiberg certification stated that the government anticipates that litigation may result from any and all tests which it undertakes. Defendants submitted an additional letter brief in support of its application on July 15, 1998.

The Court held a second telephone conference on the record on July 29, 1998. As a result of this conference, Plaintiff was instructed to submit a supplemental certification from someone who possessed personal knowledge as to when litigation in this case could have reasonably been anticipated. On August 12, 1998, Plaintiff submitted its third set of papers addressing the privilege issue, consisting of a supplemental letter brief as well as a declaration of Bill Lann Lee, Esq. In addition, all of the documents to which the privilege has been asserted have been provided to the Court for an *in camera* review, except for a document entitled "Summary of Rental Testing Conducted in Union County, N.J." dated February 12, 1996. *See supra* note 3.

---

**3.** It appears that an additional "summary report" is also prepared using the information contained in the Test File Review Forms. *Id.* ¶ 10. This memorandum also contains analysis of tests at other sites and recommendations to the Supervisory Test Coordinator with respect to further testing at each of the various sites discussed in the document. *Id.* This document, entitled

"Summary of Rental Testing in Union County New Jersey," dated February 12, 1996, was not presented to the Court for an *in camera* review and this discussion does not deal with it. Plaintiff will be directed to produce this memorandum for an *in camera* review so that the Court may evaluate the contents and decide the privilege issues as they pertain to this document.

## III. DISCUSSION

Plaintiff contends that the Test File Review Forms and the summary memoranda which analyze the data contained in these forms are protected from discovery under the work product doctrine and the deliberative process privilege. Defendants, however, contend that these documents are not subject to either privilege and that they should be produced immediately. Alternatively, Defendants argue that even if the documents are subject to protection under one or both of the privileges, they should still be produced because Defendants have shown a substantial need for the material and undue hardship in obtaining it from other sources. Each argument will be discussed in turn.

### A. Deliberative Process Privilege

■ The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of "deliberations comprising part of a process by which government decisions and policies are formulated." *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 751 (E.D.Pa.1983); *see also National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Conoco Inc. v. United States Dep't of Justice*, 687 F.2d 724, 727 (3d Cir.1982). Only predecisional communications are privileged and protected. *Id.* Materials that are exempt from discovery in civil actions include advisory opinions, recommendations, and communications relating to policy formulations. *See Hopkins v. United States Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir.1991). Subjective materials that "reflect the personal opinion of the writer, rather than the policy of the agency" are also privileged because they are considered predecisional. *Lee v. Federal Deposit Ins. Corp.*, 923 F.Supp. 451, 456 (S.D.N.Y.1996) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)). Materials that are factual in nature, on the other hand, are not privileged. *Philadelphia Newspapers, Inc. v. Department of Hous. and Urban Dev.*, 343 F.Supp. 1176, 1178 (E.D.Pa.1972); *LNC Investments, Inc. v. Republic of Nicaragua*, 1997 WL 729106, *2 (S.D.N.Y.).

■ In order to assert the deliberative process privilege, three procedural requirements must be satisfied. First, "there must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Resident Advisory Bd. v. Rizzo*, 97 F.R.D. at 752. Second, the responsible agency official must provide "precise and certain reasons" for asserting the confidentiality over the government information or documents. *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980); *Rizzo*, 97 F.R.D. at 753. Third, the government information or documents sought to be shielded must be identified and described. *Id.* Once these procedural requirements are met, the court then must determine whether or not a *prima facie* case for assertion of the privilege has been made out.

■ The inquiry into whether or not the deliberative process privilege applies, however, does not end here. Sister courts have held that even if a government agency establishes that such a demonstration has been made, courts must apply a balancing test. *See LNC Investments, Inc. v. Republic of Nicaragua*, 1997 WL 729106 at *2; *In re Franklin Nat'l Bank Securities Litig.*, 478 F.Supp. 577, 583 (E.D.N.Y.1979); *Federal Deposit Ins. Corp. v. Hatziyannis*, 180 F.R.D. 292, 293–94 (D.Md.). The balancing test weighs the benefit of preserving the integrity of internal governmental deliberations against the need for free and open discovery. *See id.* In balancing these interests, courts must consider the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigations and issues involved, and the impact on the effectiveness of government employees. *See id.* Thus, even if the material at issue falls within the scope of privilege, the balancing test determines whether the material merits pro-

tection. *Federal Deposit Ins. Corp. v. Hatziyannis,* 180 F.R.D. at 293–94.

In the present case, the government agency, the Department of Justice Housing and Enforcement Section, has not presented sufficient evidence that the materials presented to the Court for an *in camera* review fall into the deliberative process privilege.[4] The government has satisfied the formal procedural requirements for establishing the deliberative process privilege. It issued a formal claim of privilege through Bill Lann Lee, the Acting Assistant Attorney General. It also fulfilled the second procedural step by stating precise and certain reasons for asserting confidentiality over the matter. The government fulfilled the third step by identifying and describing the materials. While Plaintiff has fulfilled the procedural requirements, however, they have nevertheless failed to meet their substantive burden to sustain the privilege. In particular, as previously noted, documents that are factual in nature generally are not considered privileged material. *See Philadelphia Newspapers, Inc. v. Department of Housing and Urban Dev.,* 343 F.Supp. 1176, 1178 (E.D.Pa. 1972); *LNC Investments, Inc. v. Republic of Nicaragua,* 1997 WL 729106 at *2. The test file review forms contain nothing but descriptions as to what was said and done during the testing. They do not include opinions or evaluations of the testers. The test summary memoranda merely serve as compilations of the test file reviews and do not carry any opinions or evaluations in them. Summaries of documents, by themselves, are insufficient bases for an assertion of privilege. *See Rizzo,* 97 F.R.D. at 753.

Even assuming, *arguendo,* that the Housing and Civil Enforcement Section fulfilled the requirements of the deliberative process privilege, the balancing test would still weigh in favor of disclosing the material to Defendants. In recent cases, courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief. *See Hatziyannis,* 180 F.R.D. at 293–94; *E.E.O.C. v. Citizens Bank and Trust Co. of Maryland,* 117 F.R.D. 366,

366 (D.Md.1987). These courts have held that "when the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over." *Hatziyannis,* 180 F.R.D. at 293 (quoting *E.E.O.C. v. Citizens Bank and Trust Co. of Maryland,* 117 F.R.D. at 366). The courts look to whether the government agency is frequently a plaintiff and whether the materials in issue are case-specific. *See Hatziyannis,* 180 F.R.D. at 293–94; *E.E.O.C. v. Citizens Bank and Trust Co. of Maryland,* 117 F.R.D. at 366; *see also E.E.O.C. v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373, 1383 (D.N.M.1974).

In the present case, the Housing and Civil Enforcement Section does frequently find itself playing the role of a plaintiff. Indeed, it concedes that "every site selected to be tested is a potential defendant in a future lawsuit." *See* Freiberg Cert. ¶ 2. Further, the materials sought at issue in this case are case-specific and do not describe the deliberative process by which the government determines whether to prosecute their case. Rather, they are routine reports produced in the ordinary course of business by an organization which regularly engages in affirmative litigation. Common sense and basic fairness requires that these reports receive no greater protection than they would in the hands of a private litigant.

**B. Work Product Doctrine**

[7–12] The work product doctrine provides protection to materials prepared by an attorney or his or her agent in anticipation of litigation or for use in trial. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of the work product doctrine is to encourage careful and thorough preparation for litigation by a party's attorney. *See United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *George v. Siemens Indus. Automation, Inc.,* 182 F.R.D. 134, 139–40 (D.N.J.1998); *Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1097 (D.N.J.1996). The Supreme

---

4. As discussed in footnote 3, the February 12, 1996, memorandum was not submitted for re-

view and the Court reserves decision as to that document pending an *in camera* review.

Court in *Hickman* clarified the fundamental principles of the work product doctrine. The Court stated that

> [h]istorically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94. The doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3) and states in pertinent part that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). The Supreme Court has described the doctrine as an "intensely practical one, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170. Unlike the attorney-client privilege, however, which is absolute, the work-product privilege is qualified. *Id.* at 239, 95 S.Ct. at 2170; *George*, 182 F.R.D. at 140–41. The qualified privilege depends on the information being sought and the adversary's need for the information.[5] *See Hickman*, 329 U.S. at 512,

---

**5.** Like any other qualified privilege, the work product doctrine may be waived by the holder of the privilege and there are exceptions to the doctrine. *Rockwell*, 897 F.2d at 1266; *Westinghouse v. Republic of the Philippines*, 951 F.2d 1414, 1424–25 (3d Cir.1991); *In re Subpoenas Duces Tecum (Fulbright & Jaworski)*, 738 F.2d 1367 (D.C.Cir.1984); *United States v. AT & T*, 642 F.2d 1285, 1299 (D.C.Cir.1980); *George*, 182 F.R.D. at 140–41; *Zapata v. IBP, Inc.*, 175 F.R.D. 574, 577 (D.Kan.1997); *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 147–48 (D.N.J.1997); *Harding*, 914 F.Supp. at 1098. For example, the crime-fraud exception and the at-issue exception to the attorney-client privilege are also applicable to the work product doctrine.

*See, e.g., In re Sealed Case*, 107 F.3d 46, 51 (D.C.Cir.1997) (crime-fraud exception); *In re Grand Jury Proceedings*, 102 F.3d 748, 751 (4th Cir.1996) (crime-fraud exception); *In re Grand Jury Proceedings,* 87 F.3d 377 (9th Cir.) (crime-fraud exception), *cert. denied sub nom. The Corp. v. United States*, —— U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996); *In re Richard Roe, Inc.*, 68 F.3d 38, 39–40 (2d Cir.1995) (crime-fraud exception); *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir.1994) (crime-fraud exception); *Cox v. Administrator United States Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1422 (11th Cir.) (crime-fraud exception), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir.1994), *cert. denied,*

67 S.Ct. at 394; *Nobles,* 422 U.S. at 238, 95 S.Ct. at 2170; *George,* 182 F.R.D. at 140–41.

The party asserting work product protection has the burden of demonstrating that the documents were "prepared in anticipation of litigation." *Conoco, Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730 (3d Cir.1982); *George,* 182 F.R.D. at 140–41. The mainstay of work product protection lies in the deceivingly simple phrase, "in anticipation of litigation." *See, e.g., United States v. Rockwell Int'l,* 897 F.2d 1255, 1266 (3d Cir. 1990) ("[t]he question whether a document was prepared in anticipation of litigation is often a difficult factual matter"); *Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990) ("[t]he phrase, 'anticipation of litigation' is incapable of precise definition").

To determine whether a document was "prepared in anticipation of litigation," the appropriate inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir.1993) (citing *Rockwell,* 897 F.2d at 1266); *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979); *George,* 182 F.R.D. at 140–41. To make this determination, many courts have applied the "reasonable anticipation test" together with determining causation. *Harper v. Auto–Owners Insurance Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991). The "reasonable anticipation" test requires that the court determine at what point in time litigation could reasonably have been anticipated. *Id.*

Although there is no clear-cut rule as to the point in time when an investigation or evaluation of a claim is considered preparation for litigation, courts generally find that a "party must show more that a 'remote prospect', an 'inchoate possibility,' or a 'likely chance of litigation.'" *Id.* at 660; *Mission Nat'l Ins. Co. v. Lilly,* 112 F.R.D. 160, 163 (D.Minn.1986); *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977); *Airheart v. Chicago and North Western Transp. Co.,* 128 F.R.D. 669, 671 (D.S.D. 1989); *see also Rockwell,* 897 F.2d at 1266; *United States v. El Paso Co.,* 682 F.2d 530, 542–43 (5th Cir.), *reh'g denied,* 688 F.2d 840 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984); *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.), *reh'g denied,* 645 F.2d 71 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). A party should demonstrate that there existed "an identifiable specific claim or impending litigation when the materials were prepared." *Id.; Leonen v. Johns–Manville,* 135 F.R.D. 94, 97 (D.N.J. 1990). Thus, the mere fact that litigation did in fact occur, *see Leonen,* 135 F.R.D. at 97, that a party has consulted or retained an attorney, *see Henderson v. Zurn,* 131 F.R.D. 560, 571 (S.D.Ind.1990), that a party has undertaken investigation, *see Taroli v. General Elec. Co.,* 114 F.R.D. 97, 98 (N.D.Ind. 1987), or engaged in negotiations over the claim, *see Hydramar, Inc. v. General Dynamics Corp.,* 115 F.R.D. 147 (E.D.Pa.1986), is not enough to establish a reasonable anticipation of litigation under Rule 26(b)(3). *See Leonen,* 135 F.R.D. at 97; *George,* 182 F.R.D. at 140–41.

513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *In re Grand Jury Proceedings,* 604 F.2d 798, 802–03 (3d Cir.1979) (crime-fraud exception); *see also Insurance Corp. of Ireland, Ltd. v. Board of Trustees of So. Ill. Univ.,* 937 F.2d 331, 334, n. 3 (7th Cir.1991) (at-issue exception); *Pfohl Bros. Landfill Lit.,* 175 F.R.D. 13, 28 (W.D.N.Y.1997) (at-issue exception); *Bowne of N.Y. City, Inc. v. AmBase Corp.,* 150 F.R.D. 465 (S.D.N.Y.1993) (at-issue exception). Likewise, the privilege can be waived through certain types of disclosures to the opposing and third parties. *Westinghouse,* 951 F.2d at 1428; *George,* 182 F.R.D. at 141.

Additionally, the qualified immunity enjoyed by the work product doctrine can be overcome upon a showing of substantial need and undue hardship. *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Conoco, Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730 (3d Cir.1982); *George,* 182 F.R.D. at 141–42. Courts require a party seeking to overcome the work product protection to show that they failed at all attempts to discover the material through alternative sources. *See Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1255 (3d Cir.1993); *In re Grand Jury,* 633 F.2d 282, 290 (3d Cir.1980); *George,* 182 F.R.D. at 141–42.

In addition to the requirement that the documents produced be composed in reasonable anticipation of litigation, "the material must have been produced because of th[e] prospect of litigation and for no other purpose." *Auto–Owners Ins. Co.*, 138 F.R.D. at 660; *see Diversified Industries*, 572 F.2d at 604. When documents and materials are not prepared for litigation, but merely in the ordinary and regular course of a party's business, they are outside the scope of work product protection. *See Diversified Industries*, 572 F.2d at 604; *Henderson*, 131 F.R.D. at 570; *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir.1983); *see also Rockwell*, 897 F.2d at 1266; *George*, 182 F.R.D. at 140–41. The Third Circuit has accepted this addition to reasonable anticipation test and quotes Professors Miller and Wright:

> Prudent parties anticipate litigation, and begin in preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir.1979) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2024, at 198 (1970)).

"[T]he fact that documents prepared for a business purpose were also determined to be of potential use in pending litigation does not turn these documents into work product or confidential communications between client and attorney." *Hardy v. New York News Inc.*, 114 F.R.D. 633, 646 (S.D.N.Y.1987). Thus, case law and the language of Rule 26(b)(3) maintain that although the point at which litigation of a case can be reasonably anticipated is legitimate, the work product rule depends *primarily* on the *reason* or *purpose* for the documents' production. *In re Grand Jury Investigation*, 599 F.2d at 1229; *Auto–Owners Ins. Co.*, 138 F.R.D. at 661. Even if litigation was reasonably anticipated under the "reasonable anticipation" test, routine or ordinary investigations or reports are not work product and can be obtained through normal discovery procedures without a special showing of need. *Auto–Owners Ins. Co.*, 138 F.R.D. at 661; *Pete Rinaldi's Fast Foods v. Great American Ins. Co.*, 123 F.R.D. 198, 202 n. 4 (M.D.N.C.1988); *Mission Nat'l Ins. Co.*, 112 F.R.D. at 163.

Accordingly, "[b]oth components of the [work product] standard must be satisfied." *Auto–Owners Ins. Co.*, 138 F.R.D. at 661. "[A]n investigative or evaluative report shown to have been produced for litigation purposes when the prospect for litigation is determined to be remote is not work product." *Id.* Additionally, "a report produced at a time when litigation was justifiably anticipated is not work product if the report was produced in the ordinary course of the party's business." *Auto–Owners Ins. Co.*, 138 F.R.D. at 661.

In the present case, the materials in question, test file review forms and test summary memoranda, were prepared before the point that litigation could reasonably be anticipated. Although the precise point in time where reasonable anticipation of litigation occurs is impossible to pinpoint, it is clear that there was no specific claim or impending litigation when the materials were prepared in the present case. The Department of Justice conducts an abundance of testing in both the rental and sales markets. It is ridiculous to presume that, as Mr. Freiberg stated in his certification, litigation is reasonably anticipated every time the Department of Justice conducts one of these tests. Reasonable anticipation of litigation cannot result from a system of random testing when the testing has resulted in nothing more than a few review forms and summary memoranda. Reasonable anticipation is more likely to have occurred once these materials were reviewed by staff attorneys in the Housing & Civil Enforcement Section who in turn made the recommendation to begin the litigation process.

Additionally, these forms and memoranda amount to nothing more than materials prepared in the ordinary course of the Housing & Civil Enforcement Section's business. Defendants were not targeted by the De-

partment of Justice because of a specific complaint, but rather, they were part of a random testing scheme. Multi-family housing in Westfield, including the Westfield Manor Apartments, was apparently selected for rental testing as part of our systematic rental testing investigation in northern New Jersey. Plaintiff's ultimate determination that it had enough cause to prosecute the present claim against Defendants, and that litigation did eventually occur, do not bring the documents within the ambit of reasonable "anticipation of litigation." Accordingly, the work product privilege does not extend to these materials.

## IV. CONCLUSION

For the reasons set forth above, Defendants' application to compel the production of documents will be granted. An appropriate order will issue.

## ORDER

This matter comes before the Court on the application of Defendants, Robert M. Ernstoff, d/b/a Westfield Manor Apartments, Leslie Thompson, and Jean Thompson ("Defendants"), to compel Plaintiff, the United States of America ("Plaintiff"), to provide discovery. Defendants' application was referred to the undersigned by the Honorable John C. Lifland, U.S.D.J. The parties were directed to submit letter briefs on the issues in contention and the Court heard oral argument during a telephone conference on the record on July 29, 1998 and consistent with this Court's opinion of even date;

**IT IS,** therefore, on this 16th day of October, 1998, hereby

**ORDERED** that Plaintiff is to provide Defendants' copies of all test file review forms for Westfield Manor Apartments and a copy of the Summary Memorandum for Westfield Manor Apartments within twenty (20) days of the date of this Order; and it is further

**ORDERED** that Plaintiff is to provide the Court with a copy of the "Summary of Rental Testing in Union County New Jersey," dated February 12, 1996, for an *in camera* review

within twenty (20) days of the date of this Order.