## In re GABAPENTIN PATENT LITIGATION.

### MDL No. 1384.

Nos. CIV.A.00–CV–2931, CIV.A.00–CV–3522, CIV.A.00–CV–4168, CIV.A.00–CV–4589, CIV.A.00–CV–6073, CIV.A.01–CV–0193, CIV.A.00–CV–0611.

United States District Court, D. New Jersey.

Feb. 26, 2003.

Hugh C. Barrett, Leisa Smith, Preston K. Ratliff, II, Fitzpatrick, Cella, Harper & Scinto, New York City, John J. Francis, Jr., Drinker, Biddle & Shanley LLP, Florham, NJ, for Pfizer Inc., Warner Lambert Company, and Godecke AG.

William A. Rakoczy, Lord, Bissell & Brook, Chicago, IL, Joseph J. Fleischman, Norris, McLaughlin & Marcus, PA, Somerville, NJ, for Apotex Corp., Apotex, Inc., and TorPharm, Inc.

Edgar H. Haug, Steven M. Amundson, Frommer, Lawrence & Haug LLP, New York City, Arnold B. Calmann, Saiber, Schlesinger, Satz & Goldstein, LLC, Newark, NJ, for Purepac Pharmaceutical Co. and Faulding, Inc.

Julie A. Petruzzelli, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, Allyn Z. Lite, Lite, DePalma, Greenberg & Rivas, LLC, Newark, NJ, for Teva Pharmaceuticals Industries, Ltd. and Teva Pharmaceuticals USA.

Scott G. Lindvall, Patricia J. Clark, New York City, James E. Cecchi, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olson, P.C., Roseland, New Jersey, for Zenith Laboratories, Inc., Zenith Goldline Pharmaceuticals, Inc. and IVAX Corp.

Stanley H. Lieberstein, Michael W. Krenicky, Stamford, CT, Donald Horowitz, The Law Offices of Donald Horowitz, Hackensack, New Jersey, for Eon Labs Manufacturing, Inc.

## OPINION & ORDER

CHESLER, District Judge.

This matter comes before the Court on a motion by the MDL Defendants, (hereinafter "Defendants") to Compel Production of Documents which, they claim, are being improp-

erly withheld by the Plaintiffs. Plaintiffs Pfizer, Inc., Warner–Lambert Company, and Godecke Aktiengesselschaft (collectively "Warner–Lambert") have opposed this motion, arguing that the documents at issue are properly withheld pursuant to the attorney-client privilege, the work product privilege, and in some cases, both. This Court has reviewed the written submissions of both parties and conducted an *in camera* inspection of the five document categories into which Warner–Lambert has divided the documents they seek to withhold. The Court grants Defendants' Motion to Compel with respect to certain documents and denies the Motion with respect to others, as explained more fully below.

## I. BACKGROUND AND PROCEDURAL HISTORY

This dispute arises from ongoing patent litigation concerning the pharmaceutical known as gabapentin. Warner Lambert began marketing gabapentin capsules in 1994 and gabapentin tablets in 2000. *See* Barrett Letter Brief dated November 9, 2001 at ¶ A. By April 2000, when Warner Lambert's '482 patent, entitled "Lactam–Free Amino Acids" (hereinafter "the '482 patent") issued, a "number of companies had already developed both generic [gabapentin] capsule and tablet products and had applied for F.D.A. approval." *Id.* Warner Lambert subsequently sued seven generic companies with both tablet and capsule ANDAs, charging that their products infringed the '482 patent. Those suits were consolidated in this multi-district litigation.

On June 14, 2001, each of the parties involved in this litigation produced a log of documents withheld from production pursuant to the attorney-client and work product privileges. (Memorandum of the MDL Defendants in Support of their Motion to Compel Production of Documents (hereinafter "Def.'s Mem.") at 2; Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Production of Privileged Documents (hereinafter "Pl.'s Mem") at 2). The log provided by Warner–Lambert contained entries for about 700 documents. Those entries consisted of 8 columns labeled (ostensibly) to identify, for each document, a 1) number; 2) type; 3) date; 4) author; 5)recipients; 6)copies distributed; 7) privilege alleged; and 8) description of the document. (Def.'s Mem. at 2; Pl.'s Mem. at 2). Defendants immediately disputed the adequacy of the privilege log and alleged that Warner Lambert was withholding numerous discoverable documents. Specifically, Defendants claimed that Warner–Lambert's failure to identify authors, recipients, or dates for various documents made it impossible to determine whether the documents in question were indeed privileged; that Plaintiff's log indicated that all of the documents were being withheld under both the attorney–client and work product privileges; and that the log was inadequate because it identified the subject matter of every document simply by merely referring to the prosecution of the '482 patent (or its foreign equivalents) or as regarding "gabapentin litigation".

On July 21, 2001 Defendants sent Warner Lambert a letter identifying the alleged deficiencies in the privilege log and requesting production of additional documents. In the ensuing months Defendants sent 5 more letters regarding the inadequacy of the log and requesting production of the withheld documents. Though Warner Lambert produced some additional documents, the parties were ultimately unable to resolve the dispute.

Defendants raised their objections with the Court in a letter dated October 24, 2001, and again at a discovery conference on October 29th. At the October 29th conference this Court ordered the parties to diligently reexamine their withheld documents and produce, by November 30, 2001, revised privilege logs which reflected only those documents truly subject to the attorney-client and work product privileges. (Pl.'s Mem at 4; Def.'s Mem. At 3). On November 30 Warner Lambert extended its time to produce documents until December 7, 2001; on December 7 they produced 87 additional documents and a revised privilege log. Defendants did not make substantial modifications to their logs. (*Id.*)

Defendants filed this motion to compel on January 18, 2002. On April 24, 2002, pursuant to this Court's order dated the same, Warner Lambert submitted the documents now at issue for in camera inspection.

## II. DISCUSSION

Defendants make the following arguments in their Motion to Compel Production. First, they contend that Plaintiffs have waived the attorney-client and work product privileges through their failure to comply with the terms of Fed.R.Civ.P. 26(b)(5). Next, they argue that plaintiffs should be required to produce documents for which they are improperly claiming attorney client and work product protection. Finally, Defendants claim that production of certain documents that arguably contain an attorney's mental impressions and thought processes concerning anticipated litigation should be compelled nonetheless because the Defendants have a substantial need for the information contained therein to the extent that it relates to an interview with a patent examiner on May 11, 1999.

This Court has examined the documents submitted by Warner Lambert for in camera review [1] and made both general rulings about groups of documents and specific rulings about individual documents. This memorandum discusses whether those documents are protected by the attorney client or work product privileges and are thereby undiscoverable.[2]

### A. Attorney Client Privilege

■ Warner Lambert has claimed that almost every withheld document is subject to the attorney-client privilege. The attorney client privilege exists "to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege "protects a client's confidential communications to an attorney to obtain legal counseling." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Accordingly, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed.Cir.2000). Herein lies the problem in determining whether, in the patent context, the attorney client privilege applies: where the attorney's legal advice is rendered in the form of, for instance, a drafted patent application, is the client's communication of technical information so that the attorney can draft the application the kind of confidential communication that the privilege was intended to protect?

Courts throughout this country have been debating the application of the attorney client privilege with respect to patent practice for much of the last century. Prior to 1963, most courts considered the work of patent attorneys and employees of patent departments to be "non-legal." *Zenith Radio Corp. v. Radio Corp of America*, 121 F.Supp. 792, 793 (D.Del.1954). Then, in 1963, the Supreme Court announced that the "preparation and prosecution of patent applications for others constitutes the practice of law." *Sperry v. Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Nonetheless, the attorney client privilege remained extremely qualified and was conferred reluctantly. The underlying rationale for the sparing application of the privilege was that communications between inventor and attorney consist mostly of factual material or technical information that, once conveyed, would be used by the attorney to prosecute the patent. The attorney, then, acted as a mere "conduit" between the inventor and the patent office, and since the distilled product of the inventor's communications were intended to end up in the public domain, there could be no expectation of confidentiality and thus no privilege. This view came to be known as the "conduit theory," or

---

1. The documents submitted by Warner Lambert were sorted into five categories, designated as: (1) Communications from Attorneys; (2) Attorney's notes; (3) Attorney's drafts; (4) Communications from Client to Attorney; and (5) Communications regarding foreign patent applications.

2. This opinion will not discuss the parties' claims regarding the adequacy of the privilege logs.

Having considered the arguments of both sides regarding the insufficiency of the other's logs, the Court declines to rule on the issue. While neither side has produced what could be considered a "model" privilege log, the Court has already conducted an *in camera* inspection of the documents, thus rendering any claims about the log's adequacy largely academic.

the "Jack Winter" view, after *Jack Winter Inc. v. Koratron,* 50 F.R.D. 225 (N.D.Cal. 1970). Later courts modified this view somewhat by holding that, while technical information was presumptively unprivileged, the privilege *would* apply where technical information was communicated primarily for the purpose of giving legal advice to the client. *See Jack Winter v. Koratron Co., Inc. (Jack Winter II),* 54 F.R.D. 44, (N.D.Cal.1971).

Approximately ten years after the emergence of the Jack Winter/conduit theory, *Knogo Corp. v. U.S.,* 213 U.S.P.Q. 936, 1980 WL 39083 (1980) and it's progeny rejected the view that technical information was presumptively unprivileged and held instead that even the most technical communications between inventor and attorney may be privileged if they are "prepared to provide the patent attorney with the information necessary to assess the invention's patentability, prepare and file a patent application,...and prosecute the patent application through the Patent Office." *Id.,* 213 U.S.P.Q. at 939. *Knogo* recognizes that clients seek, and attorneys render, legal advice in the process of drafting and rewording the patent application in order to secure the strongest rights available to the client.

*Knogo* and its progeny sought to eliminate the disparities in the application of the attorney client privilege whereby clients in ordinary civil cases were presumed to enjoy the protection of the privilege when they conveyed information to an attorney in the course of seeking legal advice but inventors were not, the rationale being that they were only transmitting underlying technical information that would not be subject to the privilege. Even as courts adopted the reasoning in *Knogo,* the privilege remained difficult to apply in patent cases because the specific communication at issue in individual cases was still subjected to scrutiny as to whether it was intended to secure or convey legal advice or was merely "technical." *See*

*Comair Rotron v. Minebea,* 143 F.R.D. 494, 501. Finally, in 2000, the Federal Circuit's decision in *In Re Spalding,* 203 F.3d 800 (Fed.Cir.2000), provided a standard for the application of the attorney client privilege in patent litigation. It is clear both that Federal Circuit law governs with respect to issues unique to substantive patent law, including whether particular materials are discoverable,[3] and that the Federal Circuit's decision in *Spalding* requires that Warner Lambert's communications to and from its attorneys be protected from discovery except as provided in the more detailed explication below. Like the *Spalding* court, "we do not consider that it is necessary to dissect [each] document to separately evaluate each of its components. It is enough that the overall tenor of the documents indicates that it is a request for legal advice or services." *Spalding,* 203 F.3d at 806. Most of the documents submitted by Warner Lambert relate to the preparation and prosecution of the patent application, and therefore fall within the purview of the attorney client privilege as it is defined in *Spalding.* There are major exceptions, such as where communications that were forwarded or Cc'd to attorneys were clearly not intended to solicit or convey legal advice; these are described more fully below.

## B. Attorney Work Product

The work product doctrine provides qualified immunity from discovery to materials prepared by an attorney (or his agent) in anticipation of litigation or for use at trial. The modern genesis of the doctrine is the Supreme Court's opinion in *Hickman v. Taylor,* in which the Court rejected "'an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties.'" *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91

**3.** In patent litigations, the Federal Circuit applies "the law of the circuit in which the district court sits with respect to nonpatent issues, but [applies their] own law to issues of substantive patent law...[f]urthermore, ... 'a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the] exclusive jurisdiction [of the Federal Circuit] by statute, or if it clearly .implicates the jurisprudential responsibilities of [that] court in a field within its exclusive jurisdiction.'" *In re Spalding,* 203 F.3d 800, 803 (*quoting Midwest Indus., Inc. v. Karavan,* 175 F.3d 1356, 1359 (Fed.Cir.1999)) (*en banc* in relevant part).

L.Ed. 451 (1947) (*quoted in Sporck v. Peil,* 759 F.2d 312 (3d Cir.1985)). In holding that the attorney's work product was immune from discovery, the Court reasoned that an attorney's expectation that his work will remain private is essential to the proper preparation of the client's case, and that without such protection

> Much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* 329 U.S. at 511, 67 S.Ct. 385.

Federal Rule of Civil Procedure 26(b)(3) codifies Hickman's preservation of a zone of privacy for the attorney's thought processes and legal recommendations. The Rule provides, as pertinent, that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, . . . or agent . . .)only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

Hence, while the rule seeks to protect the "mental impressions, conclusions, opinions, or legal theories" of the attorney, the protection it provides is qualified, and can be abrogated depending on the nature and availability of the information sought and upon a showing of the adversary's need. *See Hickman,* 329 U.S. at 508, 67 S.Ct. 385; *United States v. Ernstoff,* 183 F.R.D. 148 (D.N.J.1998).

The party asserting work product protection bears the burden of demonstrating that the documents at issue were "prepared in anticipation of litigation." *Conoco, Inc. v. U.S. Dept. of Justice,* 687 F.2d 724, 730 (3d Cir.1982). Courts generally, and those in this Circuit in particular, have applied what amounts to a two part test for ascertaining whether the documents (or things) at issue should be protected under the attorney work product privilege. The first prong of the inquiry is the "reasonable anticipation" test, which requires that the "court determine at what point in time litigation could reasonably have been anticipated." *Ernstoff,* 183 F.R.D. at 155 (citing *Harper v. Auto–Owners Insurance Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991)). Whether a particular document "was prepared in anticipation of litigation is often a difficult factual matter" to discern. *United States v. Rockwell Intl.,* 897 F.2d 1255, 1266 (3d Cir.1990), in no small part because "[t]he phrase, 'anticipation of litigation' is incapable of precise definition," *Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990). In general, though, "a party must show more than a 'remote prospect,' an 'inchoate possibility,' or a 'likely chance of litigation.'" *Harper,* 138 F.R.D. at 660; *see also Ernstoff,* 183 F.R.D. at 155 (collecting cases). Rather, a party must show that there existed "an identifiable specific claim of impending litigation when the materials were prepared." *Harper,* 138 F.R.D. at 660; *Leonen,* 135 F.R.D. at 97. The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the "anticipation of litigation." *See Henderson'v. Zurn,* 131 F.R.D. 560, 571 (S.D.Ind.1990) (consultation with and retention of an attorney); *Taroli v. General Elec. Co.,* 114 F.R.D. 97, 98 (N.D.Ind.1987) (undertaking investigation). Neither will the mere fact that litigation actually occurred establish that documents prepared before the litigation were created in anticipation thereof. *Leonen,* 135 F.R.D. at 97.

This Circuit has imposed an additional requirement beyond that embodied in the reasonable anticipation test. Thus, the second prong of the test is whether "the material [was] produced because of the prospect of litigation and for no other purpose." *Auto-Owners Ins. Co.*, 138 F.R.D. at 660. In order to determine whether a document satisfies this standard, the proper inquiry is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure s.* 2024 at 198 (1970)); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir.1993) (citing *Rockwell*, 897 F.2d at 1266). Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection. *See Hardy v. New York News, Inc.*, 114 F.R.D. 633, 646 (S.D.N.Y.1987); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir.1977). Even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work product privilege still depends primarily on the reason or purpose for the documents' production. *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir.1979); *Auto-Owners Ins. Co.*, 138 F.R.D. at 661. Finally, the "articulable claim likely to lead to litigation must pertain to this particular party, not the world in general." *McCook v. Alcoa, Inc.*, 192 F.R.D. 242, 259.

Where the applicability of the work product doctrine has been established, courts may nevertheless order factual material produced "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). However, where the material at issue involves the "mental impressions, conclusions, opinions, or legal theories," of an attorney (or other representative), the showing required by the party seeking to penetrate the doctrine's protection is far greater. *See generally Upjohn*, 449 U.S. at 400–02, 101 S.Ct. 677; *Hickman*, 329 U.S. 495, 510–13, 67 S.Ct. 385, 91 L.Ed. 451.

Patent prosecutions and other legal actions peculiar to the patent process present a unique set of difficulties with respect to the application of the attorney work product privilege. Though the doctrinal development of the work product doctrine's relationship to various patent proceedings is beyond the scope of this discussion, let it suffice to say that this Circuit accepted, in 1969, that certain kinds of documents prepared in the course of patent procurement may be protected by work product privilege where they contain the kinds of legal opinions, mental impressions, and analyses that are generally shielded from discovery in other kinds of civil litigation. *See In re Natta*, 410 F.2d 187 (3d Cir.1969). Having said as much, courts have been refining the contours of this privilege as it applies to patent prosecutions and litigation for many years, and there remains no bright line rule. In balancing the realities of patent prosecutions, which may indeed result in litigation, with the general requirement that work product protection be extended only to those documents that are produced in anticipation of identifiable litigation, many courts have come to the basic conclusion that

> Generally, work performed by an attorney to prepare and prosecute a patent does not fall within the parameters of the work product protection...since the prosecution of [a] patent is a non-adversarial, *ex-parte* proceeding. Thus, work done to that end is not "in anticipation of" or ["]concerning" litigation. This rule does not, however, preclude application of the work product protection to work performed to prosecute a patent application if it was also performed in anticipation of or concerning litigation.

*In re Minebea Corp.*, 143 F.R.D. 494, 499 (S.D.N.Y.1992).

■ Therefore, documents that are routinely generated in "connection with a patent application are not protected by the work product doctrine simply because an issued patent may give rise to an infringement ac-

tion." *Softview Computer Products Corp. v. Haworth,* 2000 WL 351411 at *5 (S.D.N.Y.); *see also Stryker Corp. v. Intermedics Orthopedics,* 145 F.R.D. 298 (E.D.N.Y.1992). However, "documents pertaining to the patent application process which were also prepared because of actual or anticipated litigation may be protected by the work product doctrine." *In re Minebea,* 143 F.R.D. at 500–01.[4]

■ In the instant case, Defendants argue that any documents that pre-date the filing of the '482 patent application "could not possibly have been created with regard to any specifically anticipated litigation." Def.'s Mem. at 10. For support, Defendants cite the "holding" in *McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 261 (N.D.Ill.2000) that documents dated prior to the filing of the patent application were too distant in time from litigation to be considered "in anticipation" thereof, and as such were not work product. However, *McCook's* holding applies only narrowly to the factual scenario presented in that case. Moreover, *McCook* is not binding authority on this Court.

Second, Defendants ignore, fundamentally, the mechanism of the Hatch Waxman Act, under which this lawsuit arises. As all parties to this lawsuit are well aware, Hatch–Waxman authorizes a generic drug manufacturer to file an Abbreviated New Drug Application ("ANDA") for a generic version of a pioneer drug if it certifies that marketing its generic product would not infringe valid patents that cover the pioneer drug. *See* 21 U.S.C. § 355(j)(2)(A)(vii); 35 U.S.C. § 271(e)(2); Federal Food, Drug, and Cosmetic Act (FDCA) § 505(j)(2)(A)(vii). The ANDA process and certification requirement reflect the legislative intent to speed generic drugs to market, to encourage generic challenges of innovator patents, to provide a timely, effective mechanism for patent holders to protect their rights in a particular patent, and to prohibit the FDA's approval of any ANDA for a product whose marketing would infringe a valid patent covering the

pioneer product until the parties have had a meaningful opportunity to resolve the issue. An ANDA must contain a certification "with respect to each patent which claims the listed drug . . . or which claims a use for such listed drug for which the applicant is seeking approval," pursuant to 21 U.S.C. § 355(j)(2)(A)(vii). Pertinent here is the particular certification authorized by "paragraph four," under which the applicant certifies "that [the listed] patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted; . . ." 21 U.S.C. § 355(j)(2)(A)(vii).

The generic applicant who challenges the patent and makes a "Paragraph IV" certification is required to give notice to the holder of the patent alleged to be invalid or not infringed, after which the ANDA may become effective immediately only in the unlikely event that the patent owner has not initiated suit within 45 days of receiving notice of the certification. *See* 21 U.S.C. §§ 355(j)(5)(B)(iii) and 355(c)(3)(C); FDCA §§ 505(j)(5)(B)(iii) and 505(c)(3)(C). More typically, a patent owner initiates an infringement action, after which the FDA will automatically stay approval of the ANDA. Approval of the generic for marketing is stayed for thirty (30) month period known as the "litigation", or "cooling off" period.

Simply stated, litigation (in the form of a patent infringement action) is almost certain to follow a Paragraph IV Certification. It follows *a fortiori,* then, that in the aftermath of a Paragraph IV certification the "pioneer" whose patent is at issue would reasonably anticipate imminent litigation.

In the instant case, Defendants claim, based on testimony taken in depositions, that attorneys Tinney and Mandra did not anticipate litigation against identifiable defendants. However, the record shows that Warner Lambert received a copy of Purepac's Paragraph IV certification letter, stating that gabapentin capsules would not infringe Warner Lambert's '476 patent (also for a gabapentin product) on May 7, 1998.

---

**4.** This Court is unpersuaded by the reasoning of Magistrate and District Judges in decisions holding work product privilege applicable in various other patent related proceedings-e.g., appeals to the Patent Office–deemed (by those tribunals) quasi-adversarial or similar enough to litigation to warrant the protection for the mental thoughts, impressions, etc. of the attorney.

Because Paragraph IV certification would signal the commencement of litigation to any prudent patent holder, this Court holds that any documents created (on or) after May 7, 1998 were produced in reasonable anticipation of litigation and are protected by the work product privilege.

The exceptions to the rule regarding the May 7, 1998 cut off date (documents that were created after that date but are not the work product of an attorney) must be produced. Documents that do not qualify for work product protection but which are nonetheless privileged as communications between attorney and client are of course privileged and need not be discussed separately.

## III. RULINGS ON DOCUMENTS AND DOCUMENT CATEGORIES

Finally, the Court has established some general directions with respect to the recurrent privilege issues that arose in the course of reviewing the nearly 700 documents submitted for in camera review. These directions reflect the Court's holdings on those issues and should be applied to all documents of the type addressed by the rule, without regard to whether a particular document is discussed.

■ 1. Non–English Documents: First, documents that are written in a language other than English must be translated if Warner Lambert wishes to assert either work product or attorney-client privilege over them. Obviously, the court cannot make a determination as to the status of these documents without knowing what they say. Therefore, Warner Lambert is ordered to provide the Magistrate Judge with a translation of all documents written in a foreign language that it asserts are privileged.

The following documents (as well as any others that do not meet the criteria for either privilege for the reasons adduced above) must be produced, including document numbers 798, 109, 110, 111, 112, 115, 117, 118, 123, 124, 140, 141, 142, 143, 198, 199, 635, 639, 640, 728, 780, 815, 842, 819, 549, 559, 627, 700, 781, and 810.

2. Non–English Documents which are clearly non-privileged: Warner Lambert has provided documents which, although not written in English, are clearly recognizable as correspondence or other pre-existing documents from patent offices and the like. These documents are not protected under any imaginable privilege and must be produced.

Document numbers 127, 445 (except for cover sheet), as well as any others in this category that do not meet the criteria for either privilege for the reasons adduced above, must be produced.

2(b). Translated documents that are communications from a foreign patent office, patent examiner, or otherwise fall outside the scope of the attorney client or work product privilege such as document numbers 135, 120, 121, 122, 136, and 137 must be produced.

■ 3. Non-privileged communications or documents forwarded or Cc'd to an attorney: If documents are created for routine business purposes, by non-attorneys, they do not fall within the purview of the work product privilege. Forwarding an e-mail or other such document that fits this description to an attorney does not transform it into the attorney's work product–i.e. a reflection of his "mental impressions," or "legal strategy,"and such documents are not "created in anticipation of litigation". Neither can it be said that communications between clients, unrelated to legal issues or advice, fall under the attorney client privilege. Including an attorney on the distribution list of an interoffice memo, Cc'ing numerous people who are ancillary to the discussion, one of whom happens to be an attorney, or forwarding an e-mail several times until it reaches an attorney does not amount to "attorney client communication."

Accordingly, documents fitting this description must be produced, (as well as any others that do not meet the criteria for either privilege for the reasons adduced above) including 43, 44, 46, 87, 316, 404, 483, 485, 544, 560, 633, 731, and 861.

The first and third pages of # 212 must be produced.

Document number 84 must be produced, but the first paragraph may be redacted.

Document 84 must be produced, but the handwritten note at the bottom may be redacted.

■ 4. Attorney's Notes Dated prior to May 7, 1998 or Undated Attorney's Notes whose date of creation cannot be determined: Warner Lambert has submitted a group of documents that consists of (mostly handwritten) notes made by attorneys, for which they claim both work product and attorney client privilege. As is discussed at length, supra, the party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship. Warner Lambert has failed to establish the elements as to these documents. Since it impossible to tell when or why the undated documents were created, we are precluded from finding that they were created in anticipation of litigation and therefore order them produced. Documents dated prior to May 7, 1998 must be produced unless they are protected by the attorney client privilege. To the extent that documents in this category clearly reflect conversations or other communications with clients, they are of course privileged. However, attorney's notes and personal musings do not constitute "communications," are not privileged, and must be produced.

Accordingly, document numbers 16, 32, 34, 47, 35, 33, 30, 29, 28, 27, 26, 25, 24, 23, 22, 21, 20,18,17,14,155, 161, 190,204,231,232, 233,236,-301, 328, 352,484,487,488,492,502,786, and 857 (as well as any others that do not meet the criteria for either privilege for the reasons adduced above) must be produced.

5. Pre-existing government documents and other public records: Clearly, documents from the patent office or the patent examiner, or other governmental or public records are not privileged under either the attorney client or work product privileges. Furthermore, a privileged fax cover letter does not make, for instance, an Office Action from the Patent Examiner privileged.

Accordingly, document numbers 10, 162, 167, 200, 234, 217, 478, 294, 295,299, 322, 323, 332, 340, 333, 453, 514, 520, 798, 812, 818, 820, and 824, as well as any others that do not meet the criteria for either privilege for the reasons adduced above must be produced.

The first two pages of # 406 are privileged, but the rest must be produced.

6. Foreign Patents: Warner Lambert's document category "E" consists entirely of communications regarding foreign patent applications. Generally, the party asserting a privilege over foreign documents must provide the court with the applicable foreign statute, which the court will apply as a matter of comity if it recognizes privileges on a parallel with our own, or reject. However, since the Defendants have raised no objection to the continued protection of the documents related to foreign patents, the Court will refrain from discussing them. Therefore, all documents in category "E," except for those within the ambit of paragraph 5 of this opinion, need not be produced.

■ 7. Privileged Cover Letters attached to non-privileged documents: Warner Lambert has marked and indexed, as complete documents, submissions which are a mixture of privileged and non-privileged materials. However, stapling one privileged document to a non-privileged document does not cloak the non-privileged material with protection from discovery. Therefore, to the extent that privileged fax or other cover sheets are attached to non-privileged documents that fall into any of the other enumerated categories, the non-privileged documents must be produced.

Accordingly, with respect to the following documents, the first page is privileged and may be withheld, but the rest must be produced: # 2, 42, 296, 318, 77, 79, 422, 431, 432, 460, 748. In the case of document # 211, the second and fourth pages are not privileged and must be produced.

8. Documents Related to the May 11, 1999 Interview with the Patent Examiner

Finally, Defendants argue that documents related to the May 11, 1999 interview with the Patent Examiner should be produced, even if they would otherwise be considered attorney work product. Defendants claim to have a substantial need for these documents which, they contend, outweighs Warner Lambert's interest in withholding them. To the extent that the Court has decided that the

documents at issue must be produced for other reasons, those decisions are noted *supra.* Otherwise, the Defendants have not demonstrated a substantial need for information about the May 11, 1999 interview and an inability, without due hardship, to obtain the equivalent of the materials by other means. *See* Fed.R.Civ.P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1255 (3d Cir.1993).

### IV. CONCLUSION

For the foregoing reasons, the MDL Defendant's Motion to Compel is granted in part and denied in part.

Plaintiffs are ordered to produce the documents enumerated above, as well as any other documents that fall within the purview of the Court's directions regarding production. If Plaintiff has any good faith doubts about the discoverability of documents not specifically mentioned in this opinion, it may address those concerns to the Magistrate Judge assigned to this case.

It is so ordered.